UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-08-36-B-W |
| | ) | |
| OLIN DUDLEY STEVENS | ) | |

**ORDER ON MOTIONS TO DISMISS INDICTMENT**

Charged with violating the Sex Offender Registration and Notification Act (SORNA), Olin Dudley Stevens moves to dismiss the Indictment on a host of grounds, ranging from the failure to state an offense to constitutional infirmities. Constrained by the limitations on motions to dismiss in a criminal context, the Court denies each motion. It concludes that the Indictment does state an offense under SORNA even though neither the state of Maine nor the state of Rhode Island has fully implemented its provisions, that SORNA does not violate the separation of powers and the non-delegation doctrines, that SORNA does not violate the Commerce Clause, that SORNA does not impermissibly restrict the right to travel, that SORNA does not violate the Due Process Clause or raise *Ex Post Facto* concerns as applied in this case, and finally that whether the Government will fail to prove an essential element of the charge must await trial.

I.    **STATEMENT OF FACTS**

A.    **Four Motions to Dismiss**

On February 12, 2008, a federal grand jury indicted Olin Dudley Stevens for one count of knowingly failing to register and update his registration as required by SORNA, an alleged violation of 18 U.S.C. § 2250(a). *Indictment* (Docket # 1). More specifically, the Indictment alleges that Mr. Stevens was convicted of a sex offense in Rhode Island in 1993, was required to register under SORNA, traveled in interstate commerce, and when in Maine from February 27,

2007 to February 12, 2008, he failed to register as required.  On May 12, 2008, Mr. Stevens unleashed a broadside against the Indictment, filing four separate motions to dismiss on multiple theories.  *Def.'s Mot. to Dismiss Indictment for Failure to State an Offense* (Docket # 14) (*Def.'s First Mot.*); *Mot. to Dismiss Indictment as the Statute Charged Was Enacted in Violation [of] Numerous Restrictions on Federal Jurisdiction and Personal Freedoms Provided by the United States Constitution* (Docket # 15) (*Def.'s Second Mot.*); *Mot. to Dismiss Indictment as Unconstitutional as Applied* (Docket # 16) (*Def.'s Third Mot.*); *Mot. to Dismiss Indictment as Disc. Indicates a Failure of Proof as to an Essential Element of the Crimes Charged* (Docket # 17) (*Def.'s Fourth Mot.*).  The Government opposed each motion.  *Government's Opp'n. to Def.'s Mots. to Dismiss* (Docket # 24) (*Govt.'s Opp'n.*).  The Defendant replied to each, except the Government's opposition to the motion to dismiss as unconstitutional as applied.  *Def.'s Reply to Government's Resp. [DEN 24] to Mot. to Dismiss Indictment for Failure to State an Offense* (Docket # 27) (*Def.'s First Reply*); *Def.'s Reply to Government's Mem. in Opp'n [DEN 24] to Mot. to Dismiss Indictment as Disc. Indicates a Failure of Proof as to an Essential Element of the Crimes Charged* (Docket # 28) (*Def.'s Second Reply*); *Reply to Government's Resp. in Opp'n to Mot. to Dismiss Indictment as the Statute Charged was Enacted in Violation [of] Numerous Restrictions on Federal Jurisdiction and Personal Freedom Provided by the United States Constitution* (Docket # 29) (*Def.'s Third Reply*).

### B.    The Indictment

On February 12, 2008, a federal grand jury returned a one count Indictment against Mr. Stevens.  It alleges:

> That beginning on or about February 27, 2007, and continuing until on or about February 12, 2008, in the District of Maine, defendant Olin Dudley Stevens who (a) had been convicted of a sex offense in Rhode Island in 1993; (b) was, as a result of his conviction, required to register under the Sex Offender Registration

and Notification Act; and (c) traveled in interstate commerce; knowingly failed to register and update his registration as required by the Sex Offender Registration and Notification Act.

*Indictment* (Docket # 1). The Indictment alleges a violation of 18 U.S.C. § 2250(a).

### C.    Mr. Stevens' Evidence

To frame his arguments, Mr. Stevens proposes the following: Mr. Stevens was convicted on October 28, 1993 of two counts of Sexual Assault in the Second Degree in Rhode Island and upon his release from custody on September 8, 1995, he was placed on probation for seven and one-half years. *Def.'s Third Mot.* at 2. When released from prison, he was informed in writing of his obligation to register as a sex offender under the then applicable Rhode Island law:

> Pursuant to title 11, Chapter 37, Section 16 [of] the General Laws of the State of Rhode Island, you are required to register with the Chief of Police [of] the City or Town which you have designated within thirty (30) days of release on probation or assessment of fine. This action is necessitated by virtue of your conviction of the crime(s) of: Second Degree Sexual Assault 2 counts. Any violation of this provision will result in a misdemeanor charge punishable by a term of imprisonment of ninety (90) days and thereafter, one (1) year probation as well as a violation being initiated which could result in a revocation of probation or parole.

*Id.*; *Notice of Duty to Register* (Docket # 16-3). He was given a similar notification on July 1, 1999. *Def.'s Third Mot.* at 2-3; *Notice of Duty to Register: Offense Committed Prior to July 24, 1996* (Docket # 16-2). Sometime between December 2006 and January 2007, Mr. Stevens moved from Rhode Island to Maine. Mr. Stevens asserts that there is no evidence he was ever notified that he was obligated to register under SORNA. *Def.'s Third Mot.* at 3.

### D.    The Government's Factual Response

The Government counters with its own evidence. The Government agrees Mr. Stevens was convicted on October 28, 1993 of two counts of second degree sexual assault in Superior Court for Newport, Rhode Island. *Govt.'s Opp'n* at 3. It says that the Rhode Island statute under

which he was convicted required, as an element, proof that he "engaged in sexual contact with another person." *Id.* (citing R.I.G.L. 1956 § 11-37-4). It claims the victims of Mr. Stevens' crimes were girls age fifteen and thirteen and that he received a sentence of ten years incarceration, seven and one-half years of which were suspended. *Id.*

After he was notified on August 3, 1995 in writing of his registration duties, he registered with the town of Newport, Rhode Island, on September 8, 1995. *Govt.'s Opp'n* at 3. Sometime later, he apparently moved away from Newport and when he returned, he lived at a different address. *Id.* On December 3, 1996, he was arrested in Newport for failing to re-register as a sex offender and on December 18, 1996 he was convicted of that offense and sentenced to one year in prison. *Id.*

On July 8, 1999, Mr. Stevens registered as a sex offender in Pawtucket, Rhode Island, after being told to do so by his probation officer. *Id.* While registering in Pawtucket, he signed an acknowledgement that he had been informed of his duty to register in 1995 before he was released from prison. *Id.* at 3-4. Sometime after registering in Pawtucket, however, he moved to Woonsocket and on October 19, 2000 he was arrested there for failing to register. *Id.* at 4. He registered in Woonsocket the next day and on November 3, 2000 he received a thirty-day suspended sentence for failing to register as a sex offender. *Id.*

In mid-1999, before the Woonsocket conviction, he reunited with his younger sister, Billie Jo Stevens, and in late 1999, moved in with her and her children. *Id.* He told her about his duty to register, but misrepresented the details of his crime, saying that it arose from an incident with a seventeen-year-old former girlfriend. *Id.*

During the week of December 25-31, 2006 Mr. Stevens moved to Waterville, Maine, with his sister and her children. *Id.* On October 24, 2007, Rhode Island obtained a warrant for

4

his arrest after it discovered that he had changed residences several times since last registering as a sex offender there. *Id.* After traveling to Maine, Mr. Stevens neither informed the state of Rhode Island of his move to Maine, nor registered pursuant to Maine law. *Id.* On November 16, 2007, Mr. Stevens was arrested in Waterville, Maine, on Rhode Island's October 24, 2007 warrant. *Id.*

## II.    DISCUSSION

### A.    The Motions to Dismiss

In returning an indictment, a grand jury is carrying out a constitutional function enshrined in the Bill of Rights. U.S. CONST. amend. V (stating that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury"). Accordingly, unlike civil actions, a criminal action, particularly one initiated by an indictment, is not generally subject to dispositive motion practice. *United States v. DiTomasso*, 552 F. Supp. 2d 233, 238 (D.R.I. 2008) (stating that "[a] motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather is directed only toward the sufficiency of the indictment to charge an offense"). An indictment "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Vega Molina*, 407 F.3d 511, 527 (1st Cir. 2005).

Rule 12(b)(2) allows a party to raise "by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue," but the phrase "that the court can determine without a trial of the general issue" imposes a significant constraint. Fed. R. Crim. P. 12(b)(2). A motion to dismiss an indictment tests "its sufficiency to charge an offense,"

*United States v. Sampson*, 371 U.S. 75, 79 (1962); thus, for example, a defendant may challenge defects in the institution of the prosecution or defects in the indictment itself. *See* Fed. R. Crim. P. 12(b)(3)(A), (B).  But, in ruling on a motion to dismiss, the "allegations of the indictment must be taken as true."  *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Bohai Trading Co.*, 45 F.3d 577, 578 n.1 (1st Cir. 1995).

A court may receive evidence on a motion to dismiss in very limited circumstances.  *See United States v. Ferris*, 807 F.2d 269, 271 (1st Cir. 1986) (stating that in ruling on a motion to dismiss an indictment on statute of limitations grounds, a court must accept as true "the allegations in the indictment and the unchallenged statement of proof of the prosecutor").  As the Supreme Court explained in *Covington*, a defense is capable of determination without a trial of the general issue, if "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."[1]  *United States v. Covington*, 395 U.S. 57, 60 (1969); *United States v. Levesque*, 681 F.2d 75, 78 (1st Cir. 1982) (observing that "[w]hether the crime occurred in Indian country was thus a jurisdictional fact susceptible of determination without reference to any of the facts involved in determining defendants' guilt or innocence").

The Court's consideration of the evidence the parties have proffered is narrowly circumscribed by these constraints.

### B.      SORNA:  A Brief Background

#### 1.      The Jacob Wetterling Act:  1994

On September 13, 1994, President Clinton signed the Jacob Wetterling Act into law. Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub.

---

[1] A motion to dismiss under Rule 12(b)(2) is, of course, distinct in this regard from a motion to suppress evidence under Rule 12(b)(3)(C).

L. 103-322, Title XVII, 108 Stat. 1796 (1994) (codified at 42 U.S.C. § 14071). The Act is a federal funding statute that "condition[ed] certain federal law enforcement funding on the States' adoption of sex offender registration laws and set[] minimum standards for state programs." *Smith v. Doe*, 538 U.S. 84, 89-90 (2003); *United States v. Kapp*, 487 F. Supp. 2d 536, 538-39 (M.D. Pa. 2007). The state sex offender registration laws, commonly referred to as "Megan's Laws," have now been enacted in every state. *Smith*, 538 U.S. at 90.

In general, the Jacob Wetterling Act relied on the states to enforce provisions of their sex offender registration mandates. *See* 42 U.S.C. § 14071(b) (2000). The states of Rhode Island and Maine enacted versions of Megan's Law, and by virtue of his prior conviction, Mr. Stevens was required under both Rhode Island and Maine law to register as a sex offender. *See* R.I. Gen. Laws § 11-37.1-3; 34-A M.R.S.A. § 11223. SORNA repealed the Jacob Wetterling Act, which will cease to be effective either on July 27, 2009 or one year after the software described in section 123 of SORNA is available, whichever is later. *See Kapp*, 487 F. Supp. 2d at 539 n.4.

## 2.   SORNA: 2006

On July 27, 2006, President Bush signed into law the Adam Walsh Child Protection and Safety Act of 2006; SORNA is title I of that Act. Pub. L. No. 109-248, 120 Stat. 587 (2006) (codified in scattered sections of 42 U.S.C. and 18 U.S.C.); *see also United States v. DiTomasso*, 552 F. Supp. 2d 233, 236-37 (D.R.I. 2008) (describing the legislative backdrop for SORNA). SORNA was enacted "to protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901. SORNA can be "roughly divided into two components, the state component and the component applying to individuals. With regard to the former, SORNA requires states to implement sex offender registries which comply with SORNA requirements in 2009 or lose part of their federal funding." *DiTomasso*, 552 F. Supp. 2d at 236 (citing 42 U.S.C. §§ 16924(a),

16925(a)).  "The new registries must include standard information and be compatible with a national electronic database."  *Id.*  The state of Maine has not met these requirements.  *See Def.'s First Mot.* at 4; *Gov't.'s Opp'n.* at 6.

The individual component of SORNA makes it a federal felony to fail to register as a sex offender when required to do so by SORNA.[2]  18 U.S.C. § 2250.  SORNA sets forth the registration requirement:  "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  42 U.S.C. § 16913(a).  The law stipulates "how to keep registration current, when to register, and other related details."  *DiTomasso*, 552 F. Supp. 2d at 237.  The law "reserved some matters to be further regulated by the Attorney General, including the initial registration of sex offenders."  *Id.* (citing 42 U.S.C. §§ 16912, 16913(d), 16917).  The Attorney General addressed registration requirements in a rule promulgated on February 28, 2007:  "The requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act."[3]  28 C.F.R. § 72.3.

---

[2] The statute states:
(a)  In general.  Whoever - -
    (1)   is required to register under the Sex Offender Registration and Notification Act;
    (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
    (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
    (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
shall be fined under this title and imprisoned not more than 10 years, or both.
18 U.S.C. § 2250.

[3] On February 28, 2007, the Attorney General published an interim rule interpreting and implementing SORNA. Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8895-96 (Feb. 28, 2007); *see also* 28 C.F.R. § 72.3.  On July 2, 2008, the Attorney General published an extensive set of final guidelines to interpret and implement SORNA.  The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030 (July 2, 2008) [hereinafter National Guidelines].

C.        **The First Motion to Dismiss – Failure to State an Offense**

Section 2250(a)(3) criminalizes the knowing failure to register or update a registration "as required by [SORNA]."  18 U.S.C. § 2250(a)(3).  If neither the state of Maine nor the state of Rhode Island has implemented SORNA, Mr. Stevens rather logically contends that he cannot register under SORNA.  Thus, Mr. Stevens' first motion alleges that the Indictment is defective, since it fails to allege that either the state of Maine or the state of Rhode Island implemented SORNA, and absent state implementation, the Government "cannot allege a federal offense against him."  *Def.'s First Mot.* at 2.

Mr. Stevens' argument, though it presents a certain syllogistic attractiveness, fails upon analysis.  Section 2250(a) applies to any person who "is required to register under [SORNA]."  18 U.S.C. § 2250(a).  SORNA applies to a person who is a "sex offender," defined as "an individual who was convicted of a sex offense" and the definition of "sex offense" includes "a criminal offense that has an element involving a sexual act or sexual contact with another."  42 U.S.C. § 16911(1), (5)(A)(i).  By virtue of his conviction of second degree sexual assault, Mr. Stevens fits within the statutory definition of sex offender.

As a sex offender, SORNA requires that he "register, and keep the registration current, in each jurisdiction where [he] resides."  42 U.S.C. § 16913(a).  Under the applicable state statutes, Mr. Stevens had the legal obligation to register as a sex offender in Rhode Island and in Maine. *Govt.'s Opp'n* at 4-5 (citing R.I. Gen. Laws. § 11-37.1-9(b); 34-A M.R.S.A. § 11223). SORNA's registration requirement does not distinguish between those convicted before and after its effective date.  *United States v. Roberts*, No. 6:07-CR-70031, 2007 U.S. Dist. LEXIS 54646, at *3-4 (W.D. Va. July 27, 2007) (stating that SORNA imposes its registration requirements "without qualification").  A straightforward reading of the language of § 16913(a) suggests that,

since he was required to register in Rhode Island and Maine, the jurisdictions where he was residing, he was also required by SORNA to do so. *Id.* By failing to so register, the Indictment properly alleges that Mr. Stevens violated SORNA.

The implementing language of § 16913(d) does not alter this conclusion. Section 16913(d) grants the Attorney General

> the authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

42 U.S.C. § 16913(d). Subsection (b) addresses initial registration and provides:

> The sex offender shall initially register - -
> (1)  before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
> (2)  not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

42 U.S.C. § 16913(b). As noted earlier, on February 28, 2007 the Attorney General promulgated a regulation pursuant to this subsection which clarifies that SORNA applies to "sex offenders convicted . . . prior to the enactment of that Act." 28 C.F.R. § 72.3. This language would seem to conclusively establish that SORNA applies to Mr. Stevens.[4]

Mr. Stevens has another arrow in his quiver. He argues that even if § 72.3 clarifies that SORNA applies to persons whose convictions pre-date its effective date, the Attorney General has not yet "issued a regulation declaring that SORNA applies to those convicted before the Act

---

[4] Chief Judge Singal of this District recently concluded that, when read in tandem with the language in § 16913(b), the need for clarification in § 16913(d) applies only to a "limited class of persons who, for various reasons, did not have a registration requirement prior to the passage of SORNA but nonetheless were subject to sex offender registration requirements after SORNA became law on July 27, 2006." *United States v. Gagnon*, No. 08-cr-52-P-S, 2008 U.S. Dist. LEXIS 61458, at *9-10 (D. Me. Aug. 11, 2008); *see United States v. May*, No. 07-3515, 2008 U.S. App. LEXIS 16194, at *14-15 (8th Cir. July 31, 2008). If this interpretation is correct, Mr. Stevens' implementing regulation argument does not apply to him, since Mr. Stevens was required to register as a sex offender before SORNA became effective.

is implemented in a particular jurisdiction." *Def.'s First Mot.* at 3.  He points to language in the Attorney General's draft interpretative guidelines:

> In other words, sex offenders in these existing sex offender populations who cannot be registered within the normal SORNA time frame (i.e. before release from imprisonment or within three business days of sentencing for the registration offense) must be registered by the jurisdiction when it implements the SORNA requirements in its system within a year for sex offenders who satisfy the tier I criteria, within six months for sex offenders who satisfy the tier II criteria, and within three months for sex offenders who satisfy the tier III criteria.  If a jurisdiction believes that it is not feasible for the jurisdiction to fully register the existing sex offender population in conformity with SORNA within these time frames, the jurisdiction should inform the SMART Office of the difficulty, and the SMART Office will consider whether an extension of time for implementation of SORNA under section 124(b) is warranted on that basis.

*Id.* at 3-4 (quoting 72 Fed. Reg. at 30228).  Mr. Stevens contends that the language in this guideline confirms that "SORNA is not effective in pre-implementation jurisdictions."  *Def.'s First Mot.* at 3.

The Court cannot agree.  As *DiTomasso* points out, the statutory language is unequivocal, stating that "[a] sex offender *shall* register, and keep the registration current, in each jurisdiction where the offender resides," 42 U.S.C. § 16913(a) (emphasis added), and SORNA imposes on sex offenders "a *general* obligation to register in their jurisdiction."  *DiTomasso*, 552 F. Supp. 2d at 238.  SORNA nowhere says that it does not become effective "until the state implements the additional registration requirements of SORNA."  *Id.*

Further, the SORNA legislation itself recognized there would be a delay between the effective date of the Act and the states' ability to fully implement its requirements.  In fact, Congress charged the Attorney General to prescribe appropriate rules to address this gap:

> The Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act *or its implementation in a particular jurisdiction*, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) [of this section].

42 U.S.C. § 16913(d) (emphasis added).[5]   The Attorney General responded to this grant of

authority by promulgating 28 C.F.R. § 72.3, which clarified that SORNA applies "to all sex

offenders, including sex offenders convicted of the offense for which registration is required

prior to the enactment of that Act."[6]   28 C.F.R. § 72.3; *see also* National Guidelines, 73 Fed.

Reg. at 38035-36 ("The proposed guidelines require the application by a jurisdiction of

SORNA's requirements to sex offenders convicted prior to the enactment of SORNA or its

implementation in the jurisdiction, if they remain in the system as . . . registrants . . . .").   Thus, §

72.3 made it clear that SORNA applies retroactively to persons convicted before its effective

date without exempting individuals who reside in jurisdictions that have not fully implemented

SORNA.

    Finally, Mr. Stevens argues in effect that because some of SORNA's provisions have not

been fully implemented, none of its provisions is effective, including its most critical registration

requirement.   This proposition is simply unconvincing.   As *DiTomasso* observes, the notion that

---

[5] SORNA itself and the Attorney General's guidelines expressly acknowledge that there would be a delay between the effective date of the Act and the ability of the jurisdictions to fully implement it. *See* 42 U.S.C. § 16923(c) (providing that the Attorney General would be required to make the first complete edition of SORNA software available within two years of the effective date of the Act); 42 U.S.C. § 16924 (providing that the jurisdictions must implement the Act within three years from its effective date or within one year from the date the software becomes available); National Guidelines, 73 Fed. Reg. at 38047 (discussing the three year implementation period).
    Part of SORNA contemplates the use of sophisticated cyber-technology to track sex offenders from one jurisdiction to another.  SORNA directs the Attorney General, in consultation with the jurisdictions, to develop and support registry management and website software.  42 U.S.C. § 16923(a).  In the guidelines, the Attorney General recognized his obligation to "develop and make available to the jurisdictions software tools for the operation of their sex offender registration and notification programs."  National Guidelines, 73 Fed. Reg. at 38047.
    Despite these provisions, SORNA never exempts individuals from its operation while the jurisdictions are fully implementing its provisions.
[6] One of the two examples in the regulations is particularly relevant:
    A sex offender is convicted by a state jurisdiction in 1997 for molesting a child and is released following imprisonment in 2000.  The sex offender initially registers as required, but disappears after a couple of years and does not register in any other jurisdiction. Following the enactment of the Sex Offender Registration and Notification Act, the sex offender is found to be living in another state and is arrested there.  The sex offender has violated the requirement under the Sex Offender Registration and Notification Act to register in each state in which he resides, and could be held criminally liable under 18 U.S.C. 2250 for the violation because he traveled in interstate commerce.
28 C.F.R. § 72.3

in enacting national legislation to standardize sex offender reporting requirements and impose severe penalties against those who violate those requirements Congress would exempt large sections of sex offenders from its operation runs contrary to the "the structure and purpose of the law." *DiTomasso*, 552 F. Supp. 2d at 239.

### D.    The Second Motion to Dismiss – Constitutional Claims

In his second motion to dismiss, Mr. Stevens turns to the United States Constitution and claims that SORNA violates a number of its provisions:  (1) the separation of powers and non-delegation doctrine; (2) the Commerce Clause; and, (3) the Due Process Clause.   The Court addresses each *seriatim*.

### 1.    Separation of Powers and Non-Delegation Doctrine

Mr. Stevens argues that Congress impermissibly delegated to the Attorney General the decision about whether SORNA would be applied retroactively and in so doing, violated the Constitution's separation of powers provisions and the non-delegation doctrine.   The United States Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States."   U.S. CONST. art. I, § 1.   A necessary corollary to this provision is the non-delegation doctrine, which is "rooted in the principle of separation of powers that underlies our tripartite system of Government," and stipulates that "Congress generally cannot delegate its legislative power to another Branch."  *Mistretta v. United States*, 488 U.S. 361, 371-72 (1989).

At the same time, the Constitution does not prevent Congress from "obtaining the assistance of its coordinate Branches."  *Id.* at 372.  In *Mistretta*, the Supreme Court quoted Chief Justice Taft in "a passage now enshrined in our jurisprudence":   "'In determining what [Congress] may do in seeking assistance from another branch, the extent and character of that

13

assistance must be fixed according to common sense and the inherent necessities of government co-ordination.'" *Id.* (alteration in original) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 406 (1928)).  So long as Congress "shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power." *J.W. Hampton, Jr., & Co.*, 276 U.S. at 409.  *Mistretta* observed that "our jurisprudence has been driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta*, 488 U.S. at 372.  *Mistretta* also emphasized just how rare a decision striking down a congressional act based on delegation grounds has been, observing that until 1935, the Supreme Court had "never struck down a challenged statute on delegation grounds," and after invalidating two statutes in 1935, the Supreme Court had not done so again.[7]  *Id.* at 373; *see also Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (confirming that, as of 2001, only these two statutes have been invalidated on delegation grounds).  *Mistretta* concluded by saying that the Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting).

Mr. Stevens' claim that "Congress unconstitutionally delegated legislative authority to the Attorney General has been addressed by numerous courts, all of which have rejected the claim." *United States v. Lovejoy*, 516 F. Supp. 2d 1032, 1035 (D.N.D. 2007); *see United States v. Utesch*, No. 2:07-CR-105, 2008 U.S. Dist. LEXIS 40498, at *26-27 (E.D. Tenn. Feb. 14,

---

[7] The parties have not cited any cases decided since 2001 in which the Supreme Court has struck down a statute on delegation grounds and the Court is aware of none.

2008); *United States v. LeTourneau*, 534 F. Supp. 2d 718, 724-25 (S.D. Tex. 2008); *United States v. Gould*, 526 F. Supp. 2d 538, 545-46 (D. Md. 2007); *United States v. Hinen,* 487 F. Supp. 2d 747, 751-52 (W.D. Va. 2007); *United States v. Madera,* 474 F. Supp. 2d 1257, 1260-61 (M.D. Fla. 2007), *rev'd on other grounds*, 528 F.3d 852 (11th Cir. 2008) (per curiam); *United States v. Kelton,* No. 5:07-cr-030-Oc-10GRJ, 2007 U.S. Dist. LEXIS 65430, at *2 (M.D. Fla. Sept. 5, 2007); *United States v. Sawn,* No. 6:07-cr-00020, 2007 U.S. Dist. LEXIS 59382, at *1 (W.D. Va. Aug. 14, 2007); *United States v. Gonzales,* No. 5:07-cf-27-RJ, 2007 U.S. Dist. LEXIS 58035, at *1 (N.D. Fla. Aug. 9, 2007); *United States v. Mason,* 510 F. Supp. 2d 923, 927-28 (M.D. Fla. 2007).

There is some disagreement about what the language of § 16913(d) authorizes the Attorney General to do:

> There is a tension between the title of subsection (d) and its text. Some courts have determined that the retroactivity determination in subsection (d) applies to all previously convicted offenders who had not initially registered under SORNA. Other courts have found that the Attorney General's retroactivity determination in subsection (d) applies only in the limited situations when offenders were unable to initially register before the enactment of SORNA. Some courts have even stated that the title of subsection (d) mandates this narrow view of the Attorney General's role.

*Gould*, 526 F. Supp. 2d at 543 (compiling cases). In *Gould*, the court concluded that "the Attorney General's retroactivity determination in subsection (d) applies to all previous convictions of those eligible for registration under SORNA." *Id.* For the reasons explained in *Gould*, the Court concludes that the congressional directive to the Attorney General was to broadly determine retroactivity. *Id.* This conclusion is consistent with the Attorney General's regulations which clarify that SORNA applies "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." 28 C.F.R. § 72.3.

The Court still cannot conclude that in doing so, Congress violated the non-delegation doctrine or Article I, § 1.[8]  The congressional determination to impose national standards to mandate the registration of all sex offenders, regardless of the date of their convictions, is evident in the legislation.  42 U.S.C. § 16901 (declaring that the purpose of the legislation was to "protect the public from sex offenders and offenders against children, and . . . [to] establish[] a comprehensive national system for registration of those offenders").  In view of the clear purpose of the legislation, the congressional directive to the Attorney General creates "an intelligible principle to which [the Attorney General] . . . is directed to conform."  *J.W. Hampton, Jr., & Co.*, 276 U.S. at 409.  In short, the Court "will not interrupt over 70 years of Supreme Court precedent upholding congressional delegation."  *Madera*, 474 F. Supp. 2d at 1261.

### 2.        The Commerce Clause

Mr. Stevens next contends that SORNA is unconstitutional because it exceeds the powers delegated to Congress under the Commerce Clause of the United States Constitution.  The Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States."  U.S. CONST. art. I, § 8, cl. 3.  Congress's power under the Commerce Clause includes the power to regulate (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and, (3) "those activities having a substantial relation to interstate commerce."  *United States v. Lopez*, 514 U.S. 549, 558-59 (1995).  Mr. Stevens relies on *Lopez*, which concluded that the Gun-Free Zone Act exceeded congressional authority under the Commerce Clause and on *United States v. Morrison*, 529 U.S.

---

[8] *Gould* points out that the Attorney General had previously been tasked with enforcing SORNA's predecessor, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, and given the Department of Justice's prior experience with statutes of this kind, *Gould* concluded that the congressional direction passed constitutional muster.  *Gould*, 526 F. Supp. 2d at 545-46.

598, 617-18 (2000), which held the civil remedy portion of the Violence Against Women Act similarly unconstitutional. *Def.'s Second Mot.* at 8-11.

Mr. Stevens' argument fails. *Lopez* and *Morrison* required a determination as to whether the intrastate activity substantially affected interstate commerce. *Lopez*, 514 U.S. at 559; *Morrison*, 529 U.S. at 609. Here, Congress set out a jurisdictional predicate. SORNA does not reach a sex offender who fails to register and remains within one state; SORNA applies to a sex offender under state law only if that person fails to register and "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country." 18 U.S.C. § 2250(a)(2)(B). "Where a jurisdictional predicate is present in a statute, as is the case here, the 'substantially affects' test is inapplicable." *United States v. Hinen,* 487 F. Supp. 2d 747, 758 (W.D. Va. 2007). The jurisdictional element "distinguishes it from the statutes at issue in *Lopez* and *Morrison* and satisfies the requirements of the Commerce Clause." *Id.* As with the non-delegation argument, nearly every court to examine a Commerce Clause challenge to SORNA has rejected the argument.[9] *Gould*, 526 F. Supp. 2d at 547 n.12; *see DiTomasso*, 552 F. Supp. 2d at 245-47; *United States v. Holt*, No. 3:07-cr-0630-JAJ, 2008 U.S. Dist. LEXIS 31523, at *9-10 (S.D. Iowa Apr. 14, 2008); *United States v. Howell*, No. CR07-2013-MWB, 2008 U.S. Dist. LEXIS 7810, at *25-27 (N.D. Iowa Feb. 1, 2008) *United States v. Hacker*, No. 8:07CR243, 2008 U.S. Dist. LEXIS 7793, at *5-7 (D. Neb. Feb. 1, 2008); *United States v. Pitts*, No. 07-157-A, 2007 U.S. Dist. LEXIS 82632, at *9-13 (M.D. La. Nov. 7, 2007); *United States v. Ambert*, No. 4:07-CR-053-SPM, 2007 U.S. Dist. LEXIS 75384, at *11-12 (N.D. Fla. Oct. 10, 2007); *United States v. Cardenas,* No. 07-80108-CR-Hurley/Vitunac, 2007 U.S. Dist. LEXIS 88798 (S.D. Fla. Nov. 28,

---

[9]Concluding that "[s]urely our founding fathers did not contemplate such a broad view of federalism", Judge Presnell found that "the adoption of the statute under which Defendant is charged violates Congress's power under the Commerce Clause and is, therefore, unconstitutional." *United States v. Powers*, 544 F. Supp. 2d 1331, 1336 (M.D. Fla. 2008). Though *Powers* is admirable in its singularity, the Court cannot concur.

2007); *Lovejoy*, 516 F. Supp. 2d at 1038; *United States v. Beasley*, No. 1:07-CR-115-TCB, 2007 U.S. Dist. LEXIS 85793, at *28-29 (N.D. Ga. Oct. 10, 2007); *United States v. May*, Nos. 4:07-cr-00164-JEG, 1:07-cr-00059-JEG, 2007 U.S. Dist. LEXIS 70709, at *20-21 (S.D. Iowa Sept. 24, 2007); *Kelton,* 2007 U.S. Dist. LEXIS 65430, at *3; *Lawrance,* No. CR-07-166-D, 2007 U.S. Dist. LEXIS 75518, at *16-17 (W.D. Okla. Sept. 5, 2007); *Buxton,* No. CR-07-082-R, 2007 U.S. Dist. LEXIS 76142, *16-17 (W.D. Okla. Aug. 30, 2007); *Sawn,* 2007 U.S. Dist. LEXIS 59382, at *1; *United States v. Muzio*, No. 4:07CR179, 2007 U.S. Dist. LEXIS 54330, at *20 (E.D. Mo. July 26, 2007); *Gonzales,* 2007 U.S. Dist. LEXIS 58035, at *22-24; *United States v. Husted,* No. CR-07-105-T, 2007 U.S. Dist. LEXIS 56662, *7-8 (W.D. Okla. June 29, 2007); *United States v. Lang,* No. CR-07-0080-HE, 2007 U.S. Dist. LEXIS 56642, at *10-11 (W.D. Okla. June 5, 2007); *Mason,* 510 F. Supp. 2d at 931-32; *Hinen,* 487 F. Supp. 2d at 758; *United States v. Templeton,* No. CR-06-291-M, 2007 U.S. Dist. LEXIS 8930, at *10-11 (W.D. Okla. Feb. 7, 2007); *Madera,* 474 F. Supp. 2d at 1265.  This Court joins the overwhelming majority.

### 3.    The Due Process Clause – Freedom to Travel

Mr. Stevens' third contention is that SORNA "violates the substantive protections of the Due Process Clause contained in the Fifth Amendment to the United States Constitution in that it restricts the ability to travel of a class of persons whose travel, in and of itself, is not for a criminal purpose."  *Def.'s Second Mot.* at 12.  "The word 'travel' is not found in the text of the Constitution.   Yet the 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence."  *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (quoting *United States v. Guest*, 383 U.S. 745, 757 (1966)).  The right to travel "protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who

elect to become permanent residents, the right to be treated like other citizens of that State." *Id.* at 500.

Addressing whether a Florida state law that mandated sex offender registration and notification violated the right to travel, the Eleventh Circuit observed that "mere burdens on a person's ability to travel from state to state are not necessarily a violation of their right to travel." *Doe v. Moore*, 410 F.3d 1337, 1348 (11th Cir. 2005). *Doe* noted that persons affected by the law were not claiming that they had been treated differently because they were new or temporary residents of the state of Florida or that they were not allowed to enter and leave another state. *Id.* Rather, the appellants in *Doe* "argue[d] that it is inconvenient to travel from their permanent residence because the Sex Offender Act requires them to notify Florida law enforcement in person when they change permanent or temporary residences." *Id.* Against this inconvenience, the Eleventh Circuit found a strong state interest in "preventing future sexual offenses and alerting local law enforcement and citizens to the whereabouts of those that could reoffend." *Id.* at 1348-49. Other courts have upheld state sex offender registration laws against freedom of travel challenges. *See Doe v. Miller*, 405 F.3d 700, 712 (8th Cir. 2005); *Cutshall v. Sundquist*, 193 F.3d 466, 478 (6th Cir. 1999). The courts that have considered freedom to travel arguments against SORNA have reached the same conclusion. *Ambert*, 2007 U.S. Dist. LEXIS 75384, at *10; *Gonzales*, 2007 U.S. Dist. LEXIS 58035, at *20-22.

The *Doe* analysis applies with equal force to Mr. Stevens' assertion that SORNA registration requirements violate his right to travel. SORNA is consistent with the manifestly strong governmental interest in monitoring the whereabouts of sex offenders and preventing new offenses. Moreover, SORNA creates a national standard on registration requirements, so that its base registration requirements will be the same from state to state. Once the registration

requirements in each state meet the same federal standard, it is difficult to understand how a sex offender's exercise of the right to travel will be affected by SORNA, since wherever he travels, the basic requirements of the law will be the same. It would seem that varying state standards, some much more stringent than others, would be a more significant deterrence to traveling from state to state. Any impact against the exercise of the right to travel from SORNA is nugatory.

### E.      The Third Motion to Dismiss – Unconstitutional As Applied

#### 1.      The Rule 12(b)(2) Constraint

Mr. Stevens' third constitutional challenge is fundamentally flawed, since it relies upon evidence not properly before the Court in a Rule 12(b)(2) motion to dismiss. As discussed earlier, to proceed with an as applied challenge in a criminal case, the evidence upon which the Court relies must either be wholly separate from the facts underlying the charge or be developed at trial. Fed. R. Crim. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine *without a trial of the general issue*.") (emphasis added); *see United States v. Morales-De Jesus*, 372 F.3d 6, 8 (1st Cir. 2004) (addressing as applied constitutional challenge after jury verdict convicting defendant). Here, the evidence upon which both parties rely to argue their respective positions, however, is contested: Mr. Stevens claims he did not know and had no way of knowing that he was required to register; the Government claims that he did know and had every reason to be aware that he was required to register. *United States v. Mubayyid*, 476 F. Supp. 2d 46, 50 (D. Mass. 2007) (stating that "[t]o the extent a motion to dismiss relies on disputed facts, the motion should be denied"). Once the contested evidence is peeled away, only the allegations in the Indictment remain at the core and they provide a palpably thin basis for an as applied constitutional challenge.

### 2.       Notification

#### a.       The Notification Provisions of SORNA

SORNA establishes a duty to notify sex offenders of its registration requirements:

> (a) In general.  An appropriate official shall, shortly before release of the sex offender from custody, or, if the sex offender is not in custody, immediately after the sentencing of the sex offender, for the offense giving rise to the duty to register--
>> (1) inform the sex offender of the duties of a sex offender under this subchapter and explain those duties;
>> (2) require the sex offender to read and sign a form stating that the duty to register has been explained and that the sex offender understands the registration requirement; and
>> (3) ensure that the sex offender is registered.
> (b) Notification of sex offenders who cannot comply with subsection (a).  The Attorney General shall prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a).

42 U.S.C. § 16917.  The Attorney General has not issued any rules in accordance with this directive.  *Def.'s Third Mot.* at 6; *Govt.'s Opp'n* at 11.

#### b.       The Due Process Argument

Mr. Stevens contends that criminalizing the failure to register violates the Fifth Amendment Due Process Clause if a person "cannot reasonably be aware of the specific requirements at issue." *Def.'s Third Mot.* at 7.  In support, he cites *Lambert*, where the Supreme Court invalidated on Due Process grounds a municipal ordinance making it illegal for a convicted felon to remain in Los Angeles more than five days without registering with the police. *Lambert v. California*, 355 U.S. 225, 229-30 (1957).  In further support, Mr. Stevens cites *United States v. Barnes*, No. 07 Cr. 187, 2007 U.S. Dist. LEXIS 53245 (S.D.N.Y. July 23, 2007), in which the defendant was arrested for a SORNA violation on the same day that the Attorney General issued his regulation regarding retroactivity.

Mr. Stevens' first hurdle is that the Indictment itself charges that he "knowingly failed to register." *Indictment*. He alleges that he "had never been informed of the federal requirements." *Def.'s Third Mot.* at 5. But, his assertion is a matter of fact, not a matter of law, and whether he in fact knew enough to meet this allegation must await trial. For this reason alone, his as applied challenge fails.

Further, *Lambert* stands apart in constitutional jurisprudence. Describing *Lambert*, the First Circuit said that "*Lambert* represents one of the relatively rare instances in which the Supreme Court has concluded that, contrary to the well-established tenet, actual knowledge of the law's requirements is a precondition to criminal liability (and, therefore, ignorance of the law will excuse the defendant)." *United States v. Meade*, 175 F.3d 215, 225 (1st Cir. 1999). Since *Lambert*, the Supreme Court has "steadfastly resisted efforts to extend *Lambert*'s reach." *Id.* The Court has "gone so far as to suggest that the *Lambert* dissent correctly characterized the majority opinion as 'an isolated deviation from the strong current of precedents - a derelict on the waters of the law.'" *Id.* (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 537 n.33 (1982)). To apply *Lambert*, the defendant's conduct must be "wholly passive," the defendant must be "unaware of any wrongdoing," and there must be no circumstances that "move [him] to inquire as to the necessity of registration." *Lambert*, 355 U.S. at 228-29; *DiTomasso*, 552 F. Supp. 2d at 244. Here, the Indictment alleges that Mr. Stevens had previously been convicted of a sex offense and, as a result of his conviction, that he was required to register under SORNA. These allegations alone are sufficient to withstand a *Lambert*-based motion to dismiss the Indictment, since they are circumstances that "might move [him] to inquire as to the necessity of registration." *Lambert*, 355 U.S. at 229.

Mr. Stevens' second case, *Barnes*, is inapplicable.[10]   In *Barnes*, the indictment alleged that the defendant had failed to register "[f]rom in or about January 2007, up to and including February 28, 2007."   *Barnes*, 2007 U.S. Dist. LEXIS 53245, at *4.   *Barnes* noted that the Attorney General adopted Rule 72.3, applying SORNA "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]," on February 28, 2007.   *Id*. at *6 (citing 28 C.F.R. § 72.3).   The *Barnes* Court agreed that "the Attorney General's interim rule makes clear that Defendant is subject to SORNA's requirements."   *Id*. at *12.   However, the court concluded that the defendant's arrest for failing to register under SORNA on the same day the Attorney General specified that SORNA applied to him was not consistent with the Due Process Clause.   *Id*. at *19.   At the same time, the court emphasized that its ruling was based on "these limited circumstances where Defendant was arrested on the exact date it became clear that SORNA would be applied to him."   *Id.*   In Mr. Stevens' case, the Indictment alleges that he failed to register from about February 27, 2007 to on or about February 12, 2008; or from a day before the Attorney General issued § 72.3 until nearly a year after it was issued.[11]   If Mr. Stevens had been arrested on February 27 or February 28, 2007 the *Barnes* analysis would be germane; because he was not, it is not.

### 3.    *Ex Post Facto* and Retroactive Application

Mr. Stevens' second as applied argument is that, in violation of the constitutional prohibition against *ex post facto* laws, SORNA "'imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'"   *Def.'s Third Mot.* at 8-9 (quoting *Weaver v. Graham*, 450 U.S. 24, 28 (1981);

---

[10] Other courts have substantively disagreed with *Barnes*.  *See United States v. David*, No. 1:08CR11, 2008 U.S. Dist. LEXIS 38613, at *20-23 (W.D.N.C. May 12, 2008); *Gould*, 526 F. Supp. 2d at 544-45 (collecting cases); *Templeton*, 2007 U.S. Dist. LEXIS 8930, at *16-17; *Hinen*, 487 F. Supp. 2d at 754.

[11] As noted below, the Indictment alleges a range of time.  To reach Mr. Stevens' argument, the Court would have to decide facts – namely, when the violation actually took place - and it is not permitted to do so under Rule 12(b)(2).

citing U.S. CONST. art. I, § 9, cl. 3).  He claims that he traveled in January 2007, before the Attorney General issued the rule that made SORNA applicable to him.

In support, Mr. Stevens relies on two cases:  *United States v. Cole*, No. 07-cr-30062-DRH, 2007 U.S. Dist. LEXIS 68522 (S.D. Ill. Sept. 17, 2007) and *United States v. Stinson*, 507 F. Supp. 2d 560 (S.D. W. Va. 2007).[12]  Neither case is persuasive.  In *Cole*, the indictment alleged that the defendant failed to register from December 15, 2006 through January 31, 2007; the period of alleged breach was entirely before the Attorney General promulgated § 72.3.  *Cole*, 2007 U.S. Dist. LEXIS 68522, at *1.  In *Stinson*, the defendant traveled in interstate commerce by moving from Michigan to West Virginia in the summer of 2005, before SORNA was enacted. *Stinson* concluded that to apply SORNA to acts that took place before its enactment violated the *Ex Post Facto* Clause.  *Stinson*, 507 F. Supp. 2d at 566-71.  Again, even if the Court were to adopt *Cole* and *Stinson*'s minority view, the Indictment in this case alleges that Mr. Stevens violated SORNA from February 27, 2007 to February 12, 2008.[13]  In ruling on a motion to dismiss, the Court must take the allegations in the Indictment as true and these allegations are sufficient to survive dismissal.[14]

---

[12] As Mr. Stevens acknowledges, *Cole* and *Stinson* run counter to a substantial majority of courts on this issue, which find that there is no *ex post facto* violation under SORNA at all.  *Def.'s Third Mot.* at 9-10.  *See Cardenas*, 2007 U.S. Dist. LEXIS 88803, at *30 (collecting cases).  However, as the Indictment does not even meet the standards under the minority rule set out by Mr. Stevens, the Court need not reach this argument.  Further, if *Gagnon* and *May* are correct, *see supra* note 4 above, there is no *ex post facto* issue in this case.

[13] There is a divergence of judicial opinion on whether a violation of SORNA is ongoing or complete once the defendant travels in interstate commerce and fails to register within the three-day period allowed under the Act. *DiTomasso* states that a majority of district courts holds that the offense is not continuous, but some have ruled that it is.  *DiTomasso*, 552 F. Supp. 2d at 241 n.5 (collecting cases); *see Stinson*, 507 F. Supp. 2d at 569-70.  In the context of the motion to dismiss, the Court does not reach this issue.  The indictment alleges a period of violation from February 27, 2007 to February 12, 2008.  *Indictment*.  At trial, the Government would not be strictly bound to prove that the offense took place on the dates alleged in the indictment.  *See United States v. Morris*, 700 F.2d 427, 429 (1st Cir. 1983).  The Court will determine whether a SORNA violation is ongoing if and when the question is squarely before it.

[14] Some courts have found an *ex post facto* issue when the indictment occurred before the Attorney General promulgated §72.3, reasoning that § 16913(d) required the Attorney General "to animate SORNA's provisions to previously convicted offenders."  *Kapp*, 487 F. Supp. 2d at 542.  Others have disagreed.  *See Beasley*, 2007 U.S. Dist. LEXIS 85793, at *8-9 n.3 (collecting cases).  Mr. Stevens was indicted on February 12, 2008, well after the

**F.       Fourth Motion to Dismiss – Failure of Proof As To An Essential Element**

The very title of Mr. Stevens' fourth motion to dismiss – motion to dismiss as discovery indicates a failure of proof as to an essential element – suggests its legal inadequacy.   In this motion, Mr. Stevens claims that "discovery reveals that Mr. Stevens was never informed of his duty to register under SORNA" and "the Government will not be able to prove that his failure to register in Maine as required by SORNA was 'knowing.'" *Def.'s Fourth Mot.* at 1.   For the reasons earlier described, this motion fails because it is grounded on disputed facts.

**III.      CONCLUSION**

The Court DENIES the Defendant's Motion to Dismiss Indictment for Failure to State an Offense (Docket # 14); Motion to Dismiss Indictment as the Statute Charged Was Enacted in Violation [of] Numerous Restrictions on Federal Jurisdiction and Personal Freedoms Provided by the United States Constitution (Docket # 15); Motion to Dismiss Indictment as Unconstitutional as Applied (Docket # 16); and his Motion to Dismiss Indictment as Discovery Indicates a Failure of Proof as to an Essential Element of the Crimes Charged (Docket # 17).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of September, 2008

---

Attorney General promulgated § 72.3, and, therefore, the Attorney General had already animated SORNA, if he was required to do so.