UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-08-36-B-W |
| | ) | |
| OLIN DUDLEY STEVENS | ) | |

**MEMORANDUM DECISION**

Following a jury-waived trial, the Court finds Olin Dudley Stevens guilty of failing to register as a sex offender in violation of the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250 and 42 U.S.C. §§ 16901-16962.[1]

I.    **STATEMENT OF FACTS**

A.    **The 1993 Rhode Island Convictions, Imprisonment, and Probation**

On October 28, 1993, Olin Dudley Stevens was convicted in the state of Rhode Island of two counts of sexual assault in the second degree, and sentenced on each count to a concurrent term of ten years in prison, all but seven years and six months suspended, and a period of seven years and six months probation.  *Stipulations* ¶ 1; Gov't Ex. A (Docket # 54).  The parties have agreed that because he was placed on seven and one-half years of probation, his probation would have expired on March 8, 2003; however, because he was also convicted on October 28, 1993 of a separate, unrelated offense for which he received an eight-year term of probation, his probation term expired on September 8, 2003.  *Stipulations* ¶ 3.

B.    **The 1992 Sex Offender Registration Law and Mr. Stevens' Registration Obligation Upon Release from Incarceration in 1995**

---

[1] The Court addressed a cascade of legal issues involving SORNA in *United States v. Stevens*, 578 F. Supp. 2d 172 (D. Me. 2008).

Under Rhode Island law, upon release from incarceration, Mr. Stevens was required to register as a sex offender; the then-existing registration requirement stated:

> Any person who since July 1, 1992 has been, or shall hereafter be convicted of any offense in violation of this chapter, or convicted in another state of first degree sexual assault which if committed in this state would constitute a violation of this chapter, shall, within sixty (60) days after [July 21, 1992], or within thirty (30) days of coming into any city or town in which such person shall reside, register with the chief of police of said city or town.

1992 R.I. Pub. Laws, ch. 196, § 1, R.I. Gen. Laws § 11-37-16(a) (1992) (alteration in codification; the compiler's notes indicate the bracketed date replaced the words "the effective date of this act"), *repealed by* 1996 R.I. Pub. Laws, ch. 108, § 3.  On August 3, 1995, prison officials gave Mr. Stevens a written notice that he had a duty to register as a sex offender with "the Chief of Police of the City or Town which you have designated above within thirty (30) days of release or parole."  *Stipulations* ¶ 2; Gov't Ex. B.  Mr. Stevens signed an acknowledgement that he had read the notice and fully understood his registration duty.  *Id.*  As then written, Rhode Island law did not specify how long the registration requirement was to last. After his release from incarceration on September 8, 1995, Mr. Stevens moved to Newport, Rhode Island and under the existing law, was required to register with the Newport Chief of Police by October 8, 1995.  *See Stipulations* ¶¶ 3, 5; Gov't Ex. E.

**C.     The 1996 Sex Offender Registration Law—Duration and Frequency**

On July 24, 1996, the Rhode Island General Assembly "nominally repealed" the 1992 registration law and replaced it with a new regime.  *State v. Santos*, 870 A.2d 1029, 1030 n.1 (R.I. 2005).  The new law, the Sex Offender Registration and Community Notification Act (SORCNA), R.I. Gen. Laws § 11-37.1-1 *et seq.*, required that sex offenders register annually, but limited their registration obligation to ten years from the date of conviction:

> 11-37.1-4.   Duration of registration -- Frequency of Registration. -- (A) Any person required to register under section 11-37.1-3, shall annually register with a designated state law enforcement agency for a period of ten (10) years subsequent to the date of conviction for such offense or offenses, and shall verify his or her address with such agency on a quarterly basis for the first two (2) years of such period, unless such person has been determined to be a sexually violent predator in accordance with section 11-37.1-6(E)(3).

1996 R.I. Pub. Laws, ch. 104, § 1, R.I. Gen. Laws § 11-37.1-4(A) (1996).

### D.     The 1996 Conviction for Failure to Register

On February 5, 1996, Sergeant David Bessette of the Newport Police Department wrote to Rhode Island Attorney General Jeffrey Pine and advised him that Mr. Stevens had failed to register as required. *Stipulations* ¶ 5; Gov't Ex. E.  On November 26, 1996, a criminal complaint and arrest warrant were issued against Mr. Stevens for failure to register as required by Rhode Island law. *Id.* ¶ 6; Gov't Ex. F.  Mr. Stevens was arrested and arraigned on December 3, 1996, and he registered as a sex offender the same day. *Id.* ¶ 7; Gov't Exs. G, H.[2]  On December 18, 1996, Mr. Stevens pleaded nolo contendere to the charge of failure to register as a sex offender, a violation of R.I. Gen. Laws § 11-37-16(g) (1992), and was sentenced to a one-year term of concurrent probation. *Id. ¶* 8; Gov't Exs. F-H.

### E.     The 1997 Statutory Amendment

On July 3, 1997, the Rhode Island General Assembly altered the commencement dates for the ten-year durational limit for sex offender registration:

> 11-37.1-4.   Duration of Registration -- Frequency of registration. -- (A) Any person required to register under section 11-37.1-3, shall annually register with a designated state law enforcement agency for a period of ten (10) years subsequent to the date of *release from confinement or placement on parole, supervised*

---

[2] On February 6, 2009, the Court granted the Government's motion to seal certain exhibits in the stipulated record pursuant to the E-Government Act and the redaction policies of this District.  The Government re-filed redacted versions of those exhibits to maintain the privacy of Mr. Stevens' identifying information.  In accordance with the policy of this District not to reveal home addresses in criminal cases, the Court will list only the cities and states in which Mr. Stevens has lived.  *See* District of Maine, Electronic Case Files: User Manual at 13 (Nov. 1, 2008), http://www.med.uscourts.gov/ecf.htm.

> *release or probation* for such offense or offenses, and shall verify his or her address with such agency on a quarterly basis for the first two (2) years of such period, unless such person has been determined to be a sexually violent predator in accordance with section 11-37.1-6(E)(3).

An Act Relating to Sexual Offender Registration and Community Notification, 1997 R.I. Pub. Laws, ch. 156, § 1, R.I. Gen. Laws § 11-37.1-4(A) (effective July 3, 1997) (emphasis supplied); Gov't Ex. S.

### F.    The 2000 Conviction for Failure to Register

After his 1996 conviction for failing to register, Mr. Stevens complied for a time with the registration obligation.   On March 23, 1998, he updated his registration by informing the Newport Police that he had moved to a new address within the city.  *Stipulations* ¶ 9; Gov't Ex. I.  In the summer of 1999, Mr. Stevens moved from Newport to Pawtucket, Rhode Island, and on July 1, 1999, he signed a Notice of Duty to Register that his Probation Officer John W. Connell presented him, confirming both his new address in Pawtucket and his obligation to register with the Chief of Police there.  *Stipulations* ¶ 10; Gov't Ex. J.   Upon moving to Pawtucket, Mr. Stevens registered with the Pawtucket Police on July 8, 1999.  *Id.* ¶ 11; Gov't Ex. K.

However, when Mr. Stevens moved again in 1999 from Pawtucket to Woonsocket, Rhode Island to live with his sister and her family, Mr. Stevens failed to register his change of address.  On October 19, 2000, Mr. Stevens was arrested and charged with failing to register and he did re-register in Woonsocket on October 20, 2000.  *Stipulations* ¶¶ 13-14; Gov't Ex. L.  On November 3, 2000, Mr. Stevens was convicted for failing to register as a sex offender and he was sentenced to thirty days in jail, all suspended, and thirty days probation.  *Id.* ¶ 15; Gov't Ex. M.

### G.    The 2003 Statutory Amendment

On July 10, 2003, the Rhode Island General Assembly amended the Sex Offender Registration statute for the third time since Mr. Stevens' 1993 conviction. The new law provides in part:

> 11-37.1-4.  Duration of Registration -- Frequency of registration. -- (A) Annual Registration. - Any person required to register under section 11-37.1-3(A)(1) or (2) shall annually register with the local law enforcement agency having jurisdiction over the city or town in which the person having the duty to register resides for a period of ten (10) years from the expiration of sentence for the offense . . . .

2003 R.I. Pub. Laws, ch. 170, § 1, R.I. Gen. Laws 11-37.1-4 (2003) (effective July 10, 2003).

### H.    The January 17, 2007 Move to the State of Maine

After Mr. Stevens' 2000 conviction for failing to register, he continued to comply with the law. For example, on April 2, 2004, the Woonsocket Police verified that Mr. Stevens was still living in Woonsocket and was still registered as required. *Stipulations* ¶ 17; Gov't Ex. O. On January 17, 2007, Mr. Stevens moved with his sister and her family from Woonsocket to Waterville, Maine. *Id.* ¶ 18. After moving to Maine, Mr. Stevens did not inform Rhode Island authorities that he had moved out-of-state, and he did not register as a sex offender in Maine after arriving. *Id.* ¶ 19; Gov't Ex. P.

### I.    The February 12, 2008 Indictment

On February 12, 2008, a federal grand jury in the District of Maine indicted Mr. Stevens for allegedly violating 18 U.S.C. § 2250(a), a part of SORNA. The Indictment alleges:

> That beginning on or about February 27, 2007, and continuing until on or about February 12, 2008, in the District of Maine, defendant Olin Dudley Stevens who: (a) had been convicted of a sex offense in Rhode Island in 1993; (b) was, as a result of his conviction, required to register under [SORNA]; and (c) traveled in interstate commerce; knowingly failed to register and update his registration as required by [SORNA], [a]ll in violation of Title 18, United States Code, Section 2250(a).

*Indictment* (Docket # 1).  After Mr. Stevens waived the right to jury trial, the case was tried before the Court on January 16, 2009.  *Waiver of Trial by Jury* (Docket # 56).

### J.      Officer Durand's Testimony

The Government presented the testimony of Detective Gerard Durand of the Woonsocket, Rhode Island Police Department.  Detective Durand's responsibilities include coordination of the sex offender registry, and he has served in this role since November 1997. *Tr.* 11:21-25 (Docket # 64).  On October 20, 2000, after Mr. Stevens was arrested for failing to register in Woonsocket, Detective Durand assisted him in completing the registration paperwork. *Tr.* 26:14-21; Gov't Ex. L.  Detective Durand also confirmed that Mr. Stevens met with another officer on August 5, 2002 and re-registered.  *Tr.* 30:3-25, 31:1-23; Gov't Ex. R.  Although he had no memory of his conversation with Mr. Stevens, Detective Durand further testified that it is his routine to inform the registrant that he must re-register if he changes his address.  *Tr.* 24:10-21, 42:20-25.  Detective Durand said that he calculates the expiration date for the duty to register as a sex offender by determining from a background check what sentence was imposed for the offense, and adding ten years from the expiration of probation.  *Tr.* 20:5-9.  On cross-examination, however, Detective Durand acknowledged that the Notice of Duty to Register Mr. Stevens received on July 1, 1999 did not contain an expiration date for the duty to register.  *Tr.* 37:15-17; Gov't Ex. J.

### K.      Olin Dudley Stevens' Testimony

Mr. Stevens said that he was originally from Rhode Island, and moved to Maine on January 17, 2007.  *Tr.* 45:23-25, 46:1-6.  Mr. Stevens acknowledged that he had not registered in Maine as a sex offender, because he did not know he had to register.  *Tr.* 46:9-11.  He testified that he thought that after his probation was over, he was no longer obligated to register, and that

he obtained this understanding from the sentencing judge and his probation officer.  *Tr.* 46:15-
25, 47:1.  He testified that the sentencing judge told him "right in front of all them, that I only
had to register until my probation was over, when I was released."  *Tr.* 55:12-13.

Mr. Stevens explained why he had failed to register when he arrived in Newport after
being released from incarceration on September 8, 1995.  He said he thought the Notice of Duty
to Register form he signed in prison constituted registration, since it contained his address and
was sent to the Newport Chief of Police.  *Tr.* 47:12-25, 48:1-3; *see* Gov't Ex. B.  Mr. Stevens
also explained the circumstances surrounding his second failure to register conviction.  He said
that his parents had been in the military and when they got divorced, the children ended up as
wards of the state of Rhode Island.  *Tr.* 52:1-11.  His brother had tracked him down in 2000 and
they had "a big family reunion" in which he had reconnected with his sister for the first time in
seventeen years.  *Tr.* 51:17-25, 52:1-11.  He said the failure to register in 2000 was "an honest
mistake."  *Tr.* 52:9-11.

Mr. Stevens confirmed that—except for his December 1996 and October 2000
registrations, which both occurred in connection with being arrested for failing to register—his
three other registrations had not been prompted by an arrest.  *Tr.* 48:5-25, 49:1-25, 50:1-2, 52:12-
18.  Mr. Stevens insisted that no one ever told him that he had a continuing obligation to register
after his probation was over, and the first time he learned that he was so obligated was when he
was arrested by the U.S. Marshal in Maine.  *Tr.* 54:4-12.

## II.    DISCUSSION

### A.    SORNA

On July 27, 2006, President Bush signed into law the Adam Walsh Child Protection and
Safety Act of 2006; SORNA is title I of that Act.  Pub. L. No. 109-248, 120 Stat. 587 (2006)

(codified in scattered sections of 42 U.S.C. and 18 U.S.C.).  SORNA requires a sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  42 U.S.C. § 16913(a).  In order to enforce these requirements, SORNA makes it a federal felony to fail to register or update a registration as required by SORNA.  18 U.S.C. § 2250(a).[3]

### B.    Applying SORNA to Mr. Stevens

#### 1.    The *Ex Post Facto* Clause and the Interim Rule

The threshold question is whether application of SORNA to Mr. Stevens runs afoul of the *Ex Post Facto* Clause.  The *Ex Post Facto* Clause proscribes any law that "'imposes a punishment for an act which was not punishable at the time it was committed.'"  *United States v. Robinson*, 843 F.2d 1, 4 (1st Cir. 1988) (quoting *Weaver v. Graham*, 450 U.S. 24, 28 (1981)).  Mr. Stevens argues that he cannot be punished for acts that are illegal under SORNA if he was not subject to SORNA's requirements when he committed those acts.  Chronology is paramount. SORNA was enacted on July 27, 2006.  Mr. Stevens moved to Maine on January 17, 2007.  He does not, therefore, argue that SORNA cannot apply to him because he traveled before SORNA's effective date.  *See United States v. May*, 535 F.3d 912, 920 (8th Cir. 2008) (requiring that a sex offender's interstate travel occur after SORNA's effective date); *United States v.*

---

[3] The statute provides:

> (a)  In general.  Whoever --
> > (1) is required to register under the Sex Offender Registration and Notification Act;
> > (2) (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
> > (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> > (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
> shall be fined under this title and imprisoned not more than 10 years, or both.

18 U.S.C. § 2250.

*Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008) (same); *but see United States v. Dixon*, Nos. 08-1438 & 08-2008, 551 F.3d 578, 2008 U.S. App. LEXIS 26820, at *7 (7th Cir. 2008) (stating that "applying the Act to persons who crossed state lines before its enactment does not violate [the *Ex Post Facto*] clause").  Instead, he argues that SORNA cannot apply to him because he traveled before February 28, 2007, the date the Attorney General promulgated a regulation (the Interim Rule) clarifying that SORNA applies to all sex offenders, including those who committed sex offenses prior to SORNA's enactment.[4]  *See Def.'s Trial Br.* at 10 (Docket # 52); *Def.'s Post-Trial Br.* at 6-7 (Docket # 66).

Absent extraordinary circumstances, and Mr. Stevens argues his are, this claim depends on a false premise:  that SORNA did not apply to pre-SORNA offenders until the Attorney General said that it did.[5]  The Attorney General promulgated the Interim Rule pursuant to SORNA-delegated authority:

> (d) Initial registration of sex offenders unable to comply with subsection (b).  The Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act [enacted July 27, 2006] or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

42 U.S.C. 16913(d).  Subsection 16913(b) describes a sex offender's initial registration obligation, with which—by the terms of subsection 16913(d)—an offender must be unable to comply in order to take advantage of the Interim Rule, as Mr. Stevens seeks to do:

> (b) Initial registration.  The sex offender shall initially register—

---

[4] The Interim Rule provides:  "The requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act."  28 C.F.R. § 72.3.

[5] Addressing consolidated appeals by two pre-SORNA offenders, *Dixon* reversed the conviction of an offender who had not registered by April 5, 2007 and affirmed the conviction of an offender who had not registered by July, 2007. 551 F.3d 578, 2008 U.S. App. LEXIS 26820, at *13-17.  *Dixon* reasoned that the *Ex Post Facto* Clause requires that offenders convicted before the effective date of SORNA be given a "minimum grace period" to comply with the Attorney General's February 28, 2007 Interim Rule.  *Id.* at *16-17.  Mr. Stevens had not registered in Maine as of November 27, 2007, Gov't Ex. P, and the *ex post facto* issue that troubled the *Dixon* Court does not assist him.

> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
>
> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

42 U.S.C. § 16913(b).   The weight of authority instructs that the delegation provision of subsection 16913(d) "refers to persons who, prior to the enactment of SORNA's revised standards, were not required to register by their state's registration law." *United States v. Hinen*, 487 F. Supp. 2d 747, 750 (W.D. Va. 2007); *see United States v. Hinckley*, 550 F.3d 926, 935 (10th Cir. 2008); *May*, 535 F.3d at 919; *United States v. Gagnon*, 574 F. Supp. 2d 172, 176 (D. Me. 2008); *United States v. DiTomasso*, 552 F. Supp. 2d 233, 240-42 (D.R.I. 2008).   Although these and other courts have variously described this narrow class of offenders to whom the delegation provision applies, unless an offender fits within the class, the promulgation of the Interim Rule has no effect on the offender's case.   *See, e.g.*, *Gagnon*, 574 F. Supp. 2d at 176 (describing the narrow class to include offenders "who, for various reasons, did not have a registration requirement prior to the passage of SORNA but nonetheless were subject to sex offender registration requirements after SORNA became law"); *Hinen*, 487 F. Supp. 2d at 751 (observing that the class would include "a person who is classified as a sex offender under SORNA [who] is unable to currently register as such in a jurisdiction where he resides, works, or is a student"); *United States v. Roberts*, No. 6:07-CR-70031, 2007 U.S. Dist. LEXIS 54646, at *4 (W.D. Va. July 27, 2007) (observing that the class includes "only those currently unregistered offenders literally *unable* to comply with [subsection 16913](b) because of the age of their convictions" (emphasis in original)).   Commentary that accompanied the Attorney General's Interim Rule provides a good example of what membership in this narrow class entails:

> For example, consider the case of an offender who was convicted of, and sentenced to probation for, a sex offense within the categories for which SORNA requires registration prior to the enactment of SORNA, but who did not register

10

near the time of his sentencing because the offense in question was not subject to a registration requirement under federal law or applicable state law at the time. Following the enactment of SORNA, registration by the sex offender within the normal time period specified in [subsection 16913](b)(2)—not later than three business days after sentencing—is not possible, because that time is past.  Under [subsection 16913](d), the Attorney General has the authority to specify alternative timing rules for registration of offenders of this type.

72 Fed. Reg. 8894, 8896 (Feb. 28, 2007).[6]

Mr. Stevens is not this offender.  Rhode Island law required Mr. Stevens to register upon his release from prison in 1995, R.I. Gen. Laws § 11-37-16(a) (1992), and he did register with Newport police on December 3, 1996.  *Stipulations* ¶ 7; Gov't Ex. G.  Accordingly, (1) if the Attorney General's Interim Rule applies only to offenders who were unable to comply with their initial registration requirement, and (2) Mr. Stevens was required to register and did in fact initially register pursuant to Rhode Island law, then (3) he *was* able to comply with his initial registration requirement under SORNA, and the Interim Rule does not apply to him.  Applying this same reasoning in *May*, the Eighth Circuit observed that "[May], a sex offender who was registered prior to the enactment of SORNA, was required to keep his registration current in accordance with its terms.  Because he had first registered [] before SORNA, subsections (b) and (d), concerned exclusively with *initial* registration, do not apply to him."  *May*, 535 F.3d at 919 (emphasis and alterations in original) (internal quotations omitted).

*Hinckley* is also instructive.  In *Hinckley*, the Tenth Circuit considered whether SORNA applied to a sex offender who "traveled in interstate commerce after SORNA's enactment in July 2006, failed to register in the new jurisdiction until January 2007, and was arrested and convicted

---

[6] In this example, the offender never initially registered because state law did not require registration, and it is impossible now for the offender to comply with the initial registration requirement because more than three days have passed since the court imposed sentence.  Under these circumstances, this offender plausibly could argue that SORNA did not apply to him until the Attorney General clarified on February 28, 2007 that it did.  Supposedly, then, this offender could not be criminally liable for violating 18 U.S.C. § 2250(a) where the offense was completed before February 28, 2007.

after promulgation of the Interim Rule." *Hinckley*, 550 F.3d at 930.  Mr. Hinckley had already registered in two states as required before he was indicted for violating SORNA.  *Id.* at 935.  The court reasoned "[b]ecause he had already registered, he is not subject to SORNA's initial registration requirements in subsections (b) or (d); consequently, there is no question regarding SORNA's applicability between July 2006 and the issuance of the Interim Rule." *Hinckley*, 550 F.3d at 935.  Here, as in *May* and *Hinckley*, Mr. Stevens had already registered in Rhode Island, and according to these cases, SORNA, therefore, applied to him when it was enacted, notwithstanding that he completed the SORNA offense before promulgation of the Interim Rule.

Mr. Stevens maintains his case is different.  He argues that if he wholly discharged his obligation to register in Rhode Island upon completion of his term of probation, which occurred before SORNA was enacted, he would be able to take advantage of the Interim Rule's promulgation.  *Def.'s Post-Trial Br.* at 7.  To determine whether it needs to reach this issue, the Court must first determine the extent of his registration obligations under Rhode Island law.  If Mr. Stevens was subject to a registration obligation in Rhode Island when SORNA was enacted, it need not decide whether he is precluded from invoking the Interim Rule simply because he was once registered in Rhode Island.[7]

> 2. **Rhode Island Law**
>
> > a. **The Applicable Version of the Rhode Island Sex Offender Registration Law**

---

[7] *See Hinen*, 487 F. Supp. 2d at 751-52 (speculating that offenders who had discharged their registration obligation under state law before SORNA was enacted—either by registering for a period of years or registering and staying out of trouble—could take advantage of the Interim Rule, and avoid prosecution for conduct that occurred before it was promulgated).

There are multiple versions of the Rhode Island sex offender registration law; the first question is which, if any, applies to Mr. Stevens.[8]  In *State v. Flores*, the Supreme Court of Rhode Island answered this question.  714 A.2d 581 (R.I. 1998).  In *Flores*, the defendant had been charged with acts of child molestation that occurred on March 15 and May 23, 1995, but was not convicted until October 1996, after the July 24, 1996 legislation was enacted.  *Id.* at 582.  Reasoning that the 1996 law repealed the 1992 law, and that the 1996 law did not apply to him because he committed an offense before its effective date, the defendant argued that he was under no obligation to register as a sex offender.  *Id.*  The *Flores* Court addressed whether the July 21, 1992 law, the July 24, 1996 law, or no law applied.  Turning first to the 1992 law, the Rhode Island Supreme Court observed that it applied to "'any person who since July 1, 1992, has been, or shall hereafter be, convicted of any offense in violation of [any of the sexual assaults enumerated in chapter 37 of title 11 of the General Laws].'"  *Id.* (alteration in original) (quoting R.I. Gen. Laws § 11-37-16(a) (1992)).  The *Flores* Court concluded that the defendant "clearly falls within the class of people contemplated by the plain language of § 11-37-16, having been convicted of such an offense after July 1, 1992."  *Id.* at 583.

The *Flores* Court next considered whether the provisions of the July 24, 1996 legislation applied to the defendant.  It concluded they did not.  The Court noted that the Rhode Island General Assembly, in an uncodified section of the July 24, 1996 legislation, specified that its provisions "'shall take effect upon passage and shall apply to those persons who are convicted of an offense requiring registration . . . which was *committed after the effective date [July 24, 1996]*

---

[8] In *State v. Santos*, the Supreme Court of Rhode Island characterized as "not an easy issue" whether Rhode Island may constitutionally impose a registration requirement on an offender who committed a sex offense before the registration law was enacted on July 1, 1992.  870 A.2d 1029, 1034 n.8 (R.I. 2005).  Mr. Stevens' case does not present this issue.  Although not admitted as evidence, the Government attached a copy of the Information charging Mr. Stevens with two counts of sexual assault in the second degree, which alleges that the crimes both took place on June 30, 1993.  *Gov't's Post-Trial Br.*, Ex. A (Docket # 65-2).  Mr. Stevens has not claimed that the crimes took place before July 1, 1992.

*of this act.*'" *Id.* (emphasis in opinion) (quoting 1996 R.I. Pub. Laws, ch. 104, § 4).  It concluded that as Mr. Flores committed the crimes before July 24, 1996, the provisions of that law did not apply to him.  The same logic applies to Mr. Stevens.

*Flores* also resolved whether the provisions of the July 1, 1992 law remained effective, since the Rhode Island General Assembly repealed the 1992 law when it enacted the 1996 law. The Supreme Court quoted the 1996 statutory language:  "Nothing herein shall be construed to abrogate any duty to register which exists or existed under the provisions of § 11-37-16[, the 1992 law]." *Id.* (quoting R.I. Gen. Laws § 11-37.1-18 (1996)).  The *Flores* Court concluded that the 1992 law still applied to Mr. Flores, even though he was convicted after the effective date of the 1996 legislation.  *Id.*  This holding applies with the same, if not greater force, to Mr. Stevens, who committed the crimes and was convicted before the effective date of the 1996 legislation. The Court concludes that Mr. Stevens' obligation to register as a sex offender in Rhode Island is controlled by the provisions of § 11-37-16, the July 1, 1992 legislation.  *Santos*, 870 A.2d at 1030 n.1 (stating that the 1992 law, "although nominally repealed, is still effective with respect to a limited class of individuals").[9]

### b.     The Term of the Registration Requirement

The 1992 statute is anomalous, because it mandates registration, but fails to mention when the duty ends.  Later versions of the Rhode Island sex offender registration law generally expanded the scope and intensity of registration requirements.  *See Flores*, 714 A.2d at 584 (stating that "[i]t is apparent that [the 1996 law] has established a registration scheme that is more stringent and applies more broadly than the previous version").  But, these later versions each provided a termination point for the duty to register:  first, ten years from the date of

---

[9] The parties do not argue that if the 1996 legislation does not apply to Mr. Stevens, subsequent amendments to that legislation somehow do apply to him.

conviction, then ten years from the date of release and commencement of the term of probation, and finally ten years from the expiration of the sentence.  If the absence of a time period for registration in the 1992 law means that the sex offender must register for life, it is odd that in enacting increasingly more stringent legislation in this area, the Rhode Island General Assembly would in the same legislation vastly reduce the period for registration.

Recognizing this anomaly, Mr. Stevens urges a highly restrictive interpretation of the registration requirement in the 1992 law.  He says that the 1992 law mandated only a single registration, which once done, satisfied the law's requirement:

> There is only mention of a requirement to register once.  Because it is as likely that the law required only a single registration as it did an ongoing obligation, and because any ambiguity in the law must be construed in favor of Mr. Stevens, the proposition that this was an ongoing requirement is without legal support.

*Def.'s Post-Trial Br.* at 3.  Mr. Stevens relies on the "rule of lenity," which requires "ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."  *United States v. Santos*, __ U.S. __, 128 S. Ct. 2020, 2025 (2008); *United States v. Godin*, 534 F.3d 51, 60-61 (1st Cir. 2008).

The Court disagrees with Mr. Stevens' restrictive interpretation.  His argument ignores the remaining provisions of the 1992 law and its manifest policy.  First, a law so easily avoided is no law at all.  A sex offender, once registered, could entirely avoid the registration requirement of the law simply by moving.  Further, under § 11-37-16(f), the 1992 law deals with changes of address:

> If any person required to register pursuant to this section changes his or her address, the person shall inform, in writing within ten (10) days, the law enforcement agency with whom he or she last registered of the new address.  The law enforcement agency shall, within three (3) days after receipt of this information, forward it to the attorney general.  The attorney general shall forward appropriate registration data to the law enforcement agency having local jurisdiction of the new place of residence.

R.I. Gen. Laws § 11-37-16(f) (1992).  Under this provision, if Mr. Stevens is correct that the 1992 law requires only one registration, it is only if the sex offender stays put.  If the sex offender moves, he must give notice.[10]  Mr. Stevens changed his address when he moved to Maine and failed to inform the Woonsocket Police within ten days that he had done so.  Accordingly, under the terms of the applicable law, he violated the 1992 version of the Rhode Island sex offender registration law when he moved to Waterville, Maine and failed to notify the Woonsocket Police.

Finally, it is true that the absence of a termination point for sex offender registration in the 1992 law is counterintuitive, especially in view of the shorter ten-year periods in the later more stringent legislation.  However, the 1992 law contains a means by which some defendants, not however Mr. Stevens, who have been convicted of non-violent crimes that require registration can apply to have their records expunged; if granted, the expungement would relieve them of the registration obligation.[11]  R.I. Gen. Laws § 11-37-16(k) (1992).

The Court concludes that the 1992 law applicable to Mr. Stevens required lifetime registration, absent expungement, and specifically mandated his notification to the Woonsocket Police Department when he moved to Waterville, Maine on January 17, 2007.  Accordingly, the

---

[10] To the extent there is any doubt about his continuing obligation to register, § 11-37-16(k) closes the door.  R.I. Gen. Laws § 11-37-16(k) (1992).  It says that a person required to register pursuant to this section "may be relieved of any further duty to register upon the granting of a petition for expungement."  *Id.*  If Mr. Stevens was correct and the duty to register is a one-time event, there would be no "further duty to register" from which to be relieved.

[11] Rhode Island law allows a convicted person to move the court in which the conviction took place to expunge the conviction.  R.I. Gen. Laws § 12-1.3-2.  Notice must be given to the department of the attorney general and police department that originally brought the charge.  R.I. Gen. Laws § 12-1.3-3.  For misdemeanors, a person may not so move until five years after the conviction and for felonies, the period is ten years.  R.I. Gen. Laws §12-1.3-2(b) to -2(c).  The Supreme Court of Rhode Island has set forth other considerations.  *State v. Alejo*, 723 A.2d 762, 764 (R.I. 1999).

A person convicted of a crime of violence is not eligible for expungement.  Crime of violence is defined to include a number of sexual assault offenses, including second degree sexual assault.  R.I. Gen. Laws § 12-1.3-1(1).  But, there is at least one offense—the violation of a duty to report sexual assault—that would require registration, but would not fit within the definition of crime of violence, and the offender would be eligible to move for expungement.

Court disagrees with Mr. Stevens' claim that his registration obligation terminated with his term of probation.  The Court therefore need not decide whether application of SORNA to Mr. Stevens would violate the *Ex Post Facto* Clause if his registration obligation had terminated under Rhode Island law before SORNA was enacted.

### 3.    Maine Law

The Court is unaware of any authority that Mr. Stevens must also have been required to register under Maine law for him to be subject to SORNA's requirements.  Nevertheless, the Government, perhaps inadvertently, implies that this is the case:  "Because . . . Defendant was convicted of a qualifying sex offense and had ongoing obligations to register in both Rhode Island and Maine, he was required to register under SORNA."  *Gov't's Post-Trial Br.* at 8 (Docket # 65).  Out of an abundance of caution, the Court analyzes Mr. Stevens' obligations under Maine law and concludes that he was required to register in Maine when he moved there on January 17, 2007.

Because Mr. Stevens was required to register as a sex offender under Rhode Island law, when he moved to Maine in 2007, he had a derivative obligation to register under Maine law. 34-A M.R.S.A. § 11223.   Under the same Maine statute, however, Mr. Stevens had an independent obligation to register as a sex offender in Maine, since he had been "sentenced on or after January 1, 1982 for an offense that includes the essential elements of a sex offense or a sexually violent offense."  *Id.*  The statutory definition of sexual assault in the second degree under which Mr. Stevens was convicted includes "the essential elements of a sex offense or a sexually violent offense."  *Id.*; *compare* 34-A M.R.S.A. § 11203(6)-(7) (defining "sex offense"

17

and "sexually violent offense"), *with* R.I. Gen Laws § 11-37-4 (1993) (defining the elements of sexual assault in the second degree).[12]

### C.    The Elements of a SORNA Offense

Because Mr. Stevens was subject to a state law registration requirement when SORNA was enacted, like the defendants in *May* and *Hinckle*, he is not in the narrow class of offenders to which the Interim Rule applies.  He was subject to SORNA when he moved to Maine on January 17, 2007.  To convict Mr. Stevens of violating SORNA, the Government must prove beyond a reasonable doubt that he (1) is required to register under SORNA; (2) traveled in interstate commerce; and (3) knowingly failed to register or update his registration as required by SORNA. 18 U.S.C. § 2250(a).

### 1.    Mr. Stevens' Registration Requirement

Under SORNA, a "sex offender" is required to register and keep the registration current. 42 U.S.C. § 16913(a).  SORNA defines "sex offender" as "an individual who was convicted of a sex offense."  42 U.S.C. § 16911(1).  Generally, a "sex offense" is "a criminal offense that has an element involving a sexual act or sexual contact with another," or "a criminal offense that is a specified offense against a minor."  42 U.S.C. § 16911(5)(A)(i)-(ii).  The parties agreed that on October 28, 1993, Mr. Stevens was convicted in Rhode Island of two counts of sexual assault in

---

[12] Maine law classifies sex offenders as either ten-year or lifetime registrants.  The duration corresponds to the severity of the underlying offense.  34-A M.R.S.A. 11203(5)-(8).  Regardless of whether a sexually violent offender is convicted in Maine or elsewhere, that offender must register for life as a lifetime registrant.  34-A M.R.S.A. § 11225-A(3)-(4).  A ten-year registrant need only register for ten years; and, if convicted in another jurisdiction, may qualify for day-for-day credit for time registered in another state.  34-A M.R.S.A. § 11225-A(2)(A).  Mr. Stevens contends that these time-registered credits could mean he had already fulfilled his registration obligation in Maine by the time he moved there.  *Def.'s Trial Br.* at 10.  But, he assumes too much.  First, he assumes that he is a ten-year, not a lifetime registrant, which the Court cannot determine on this record.  Second, credits are awarded only "for the time actually registered pursuant to the other jurisdiction's sex offender registration statutes."  34-A M.R.S.A. § 11225-A(2)(A).  Here, the Court cannot determine how long he was "actually registered" in Rhode Island.  Finally, this credit is available only upon application and presentment of sufficient documentation to the State Bureau of Identification.  *Id.*  The Court will not base a finding that Mr. Stevens was not required to register in Maine on a never-applied-for credit of unknown magnitude.

18

the second degree. *Stipulations* ¶ 1.  At the time of Mr. Stevens' convictions, Rhode Island law provided:

> A person is guilty of a second degree sexual assault if he or she engages in sexual contact with another person and if any of the following circumstances exist:
> (A)  The accused knows or has reason to know that the victim is mentally incapacitated, mentally disabled or physically helpless.
> (B)  The accused uses force or coercion.
> (C)  The accused engages in the medical treatment or examination of the victim for the purpose of sexual arousal, gratification or stimulation.

R.I. Gen. Laws § 11-37-4 (1993).  There is no dispute whether Mr. Stevens committed a "sex offense" as SORNA defines it—in fact, he concedes that he did.  *Def.'s Trial Br.* at 7.  The Court finds that the Government has established beyond a reasonable doubt that Mr. Stevens is a sex offender who is required to register under SORNA.

### 2.     Mr. Stevens' Travel in Interstate Commerce and the Variance

There is no dispute that Mr. Stevens moved from Rhode Island to Maine on January 17, 2007.  *Stipulations* ¶ 18; *Tr.* 46:1-6; *Def.'s Trial Br.* at 10.  Mr. Stevens has not argued that the Government must prove more than this interstate relocation in order to prove beyond a reasonable doubt that he traveled in interstate commerce.  The Court finds this jurisdictional element proven.  Both parties believe, however, that the exact date of Mr. Stevens' interstate travel raises a thorny issue that the Court's *ex post facto* analysis leaves unresolved.

Mr. Stevens claims that he cannot be convicted of the crime charged, because there is a variance between the allegation and the proof.  The Indictment alleges that he committed the offense "beginning on or about February 27, 2007, and continuing until on or about February 12, 2008."  *Indictment*.  Assuming he committed the offense, Mr. Stevens points out that it would have been complete well before commencement of the alleged timeframe.  *Def.'s Trial Br.* at 10.  Apparently, this variance also troubles the Government:  "Since Defendant's interstate travel was

19

complete in January, 2007, when he moved from Rhode Island to Maine, Defendant is only guilty of violating SORNA during the period charged in the indictment if SORNA is a continuing offense." *Gov't's Post-Trial Br.* at 11.  Mr. Stevens and the Government are right; there is a variance.  But, the Court does not share their concern.

The Government seems to imply that if it cannot prove that Mr. Stevens violated SORNA within the period charged in the Indictment, the Court must acquit.  However, "[w]here a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required." *United States v. Morris*, 700 F.2d 427, 429 (1st Cir. 1983).  Ordinarily, it is sufficient if the Government proves that the offense occurred on any date "before the return of the indictment and within the statute of limitations." *Id.* (internal quotations omitted).  If the date is not an element of the crime, and absent an indication that the offense conduct occurred outside the limitations period, the "critical inquiry is . . . whether [Mr. Stevens] was prejudiced [by the variance]." *Id.*; *see United States v. Munoz-Franco*, 487 F.3d 25, 64 (1st Cir. 2007) (instructing that a variance is "material and reversible only if it has affected the defendant's substantial rights:  to be informed of the charges; and to prevent a second prosecution for the same offense" (internal quotations omitted)).  Mr. Stevens has advanced only the argument that his date of travel raises *ex post facto* issues, and has not argued prejudice under *Munoz-Franco*.  Finding none, the Court lets the variance pass and declines the Government's invitation to determine unnecessarily whether a SORNA violation is a continuing offense.  *See Stevens*, 578 F. Supp. at 189 n.13.

### 3.    Mr. Stevens' Knowing Failure to Register as Required by SORNA

The Government must prove that Mr. Stevens knowingly failed "to register or update a registration" as required by SORNA.  18 U.S.C. § 2250(a)(3).  As a sex offender subject to a

registration requirement that pre-dated SORNA, Mr. Stevens was under an obligation to keep his registration current by appearing in at least one jurisdiction involved. *See May*, 535 F.3d at 919; *Gagnon*, 574 F.Supp.2d at 176. SORNA specifically requires that

> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.

42 U.S.C. § 16913(c). There is no dispute that upon moving to Maine, Mr. Stevens neither updated his registration in Rhode Island nor registered in Maine. *Stipulations* ¶ 19. The Government must prove beyond a reasonable doubt that he "knowingly" failed to do either one.

In his commentary on the evidence, Mr. Stevens appears to believe that he cannot be convicted of a SORNA violation unless the Government proves that he knew of his obligation to comply with SORNA itself. In other words, he argues that proof of his knowing failure to register as required by SORNA must include proof that he knew SORNA required him to register. *See Def.'s Post-Trial Br.* at 7-12. Maintaining that he did not know of this requirement, Mr. Stevens argues that "[i]f the term 'knowingly' is to mean anything, then the Court should find that the Government has failed to prove that [he] had the requisite knowledge to prove the crime charged in the Indictment." *Def.'s Post-Trial Br.* at 12. Although not explicitly, Mr. Stevens' argument on this point raises a hybrid Due Process and failure of proof claim; namely, that the Due Process Clause requires the Court to interpret 18 U.S.C. § 2250(a) as a specific intent crime. Recognizing that these constitutional and liability issues are distinct, the Court determines they are best analyzed separately.

The first question is whether the Government has proven that Mr. Stevens actually knew that he was subject to any registration requirement—under Rhode Island, Maine, or federal law—when he moved to Maine and failed to register or update his registration. The second is, if

he did not actually know of any registration requirement, whether it violates the Due Process Clause to find him guilty nevertheless.

### a.    Actual Knowledge

#### i.    What Mr. Stevens Was Told About the Durational Requirement and the 1996 Conviction for Failure to Register

Mr. Stevens testified that the judge told him at his sentencing, and his probation officer shortly thereafter reiterated, that he was required to register only until the end of his probation. This is demonstrably incorrect.  *See Tr.* 46:15-25, 47:1, 54:25, 55:1-13.  Mr. Stevens was sentenced on October 28, 1993.  At that point, Rhode Island law contained no durational limit on a sex offender's registration obligation.  It was not until July 24, 1996 that Rhode Island adopted a ten-year durational limit; the limit was ten years from the date of conviction, which would have coincided with the end of his probation on the two sexual assault convictions.  There is no explanation how the sentencing judge and probation officer would in 1993 have advised Mr. Stevens about a durational registration requirement that matched a statute enacted in 1996.

Mr. Stevens' 1996 conviction for failure to register does not shed much light on the extent of his actual knowledge.  Mr. Stevens' explanation for why he failed to register when he returned to Newport in 1995 is weak.  He says that he thought the Notice of Duty to Register form he signed in prison itself fulfilled the registration requirement.  But, this is not what the form says.  The form, which he signed, clearly informed him of his duty to register "with the Chief of Police of the City or Town which you have designated above"—in this case Newport— "within thirty (30) days of release or parole."  *Stipulations* ¶ 2; Gov't Ex. B.  The Court draws a slight implication from this 1996 episode that Mr. Stevens was generally reluctant to register as a sex offender.

#### ii.    The 1998 Change of Address in Newport

On December 3, 1996, the same day he was arrested for failing to register upon moving to Newport, Mr. Stevens registered. *Stipulations* ¶ 7; Gov't Ex. G; *Tr.* 48:4-15. For a little over a year, all was quiet. Then, on March 23, 1998 Mr. Stevens updated his registration by informing Newport Police that he had moved to a new address in Newport. *Stipulations* ¶ 9; Gov't Ex. I. Mr. Stevens agreed that he updated his registration in 1998 "voluntarily." *Tr.* 49:4-5. However, he also explained that he "was brought in" to the Newport Police department to update his registration.[13] *Tr.* 48:25, 49:1-3.

### iii.    The 1999 Move to Pawtucket

Mr. Stevens moved to Pawtucket in the summer of 1999 to be with his brother. Before moving on July 1, 1999, Mr. Stevens' probation officer advised him in writing of his duty to register, which Mr. Stevens acknowledged in writing. Gov't Ex. J. Mr. Stevens registered as a sex offender in Pawtucket on July 8, 1999 and the form confirms that he had been "notified of his duty to register on September 8, 1995." Gov't Ex. K. The form does not, however, make any reference to an ending date for his duty to register. *Id.* At that point, Rhode Island had enacted the ten-year duration requirement and had amended the law to provide that the commencement of probation, not the date of conviction, was the operative date for the beginning of the ten-year registration period. The information on the registration form neither corresponds to nor contradicts the requirements of the law.

---

[13] The Court does not know how to interpret Mr. Stevens' testimony on this minor point:

Q. Okay. So it appears that you went into the police
department and told them that you were living at the new
address?
A. I was brought in there, yes.
Q. Okay. Did you go in there voluntarily?
A. Yes.

*Tr.* 48:25, 49:1-5. Usually it is not voluntary, when the police take you to the station, but Mr. Stevens' testimony is too vague to draw any conclusions.

That is not the only aspect of the registration paperwork that is confusing.  By the time Mr. Stevens moved to Pawtucket, the Supreme Court of Rhode Island had decided *Flores*, which established that the 1992 law continued to control the registration obligations of sex offenders who committed offenses before the 1996 law was effective.   Indeed, the Notice of Duty to Register that Mr. Stevens acknowledged on July 1, 1999 is consistent with *Flores*.  It explicitly applies to an "offense committed prior to July 24, 1996," and refers to the 1992 law notwithstanding its repeal by SORCNA in 1996.  Gov't Ex. J.  However, despite *Flores*, the post-1996 sex offender registration forms cite SORCNA, R.I. Gen. Laws § 11-37.1-1 *et seq.*, as the statute that requires registration.  No mention is made of Mr. Stevens' class of offenders to whom under *Flores* SORCNA does not apply.  *See* Gov't Ex. I (1998 form requiring registration pursuant to the "Sexual Offender Registration and Community Notification Act"—community notification became a part of Rhode Island law in 1996); Gov't Ex. K (1999 form, same); Gov't Ex. L (2000 form, same); Gov't Ex. R (2002 form, same).

### iv.    The 2000 Conviction for Failure to Register

Later in 1999 Mr. Stevens moved to Woonsocket to be near his long-lost sister and her minor children, but failed to register with the Woonsocket Police Department.[14]   He was discovered in 2000, convicted of his second failure to register offense, and sentenced on November 3, 2000.  Gov't Ex. M.  The Court is skeptical about Mr. Stevens' explanation that

---

[14] Mr. Stevens' various moves require some piecing together.  When Mr. Stevens moved to Pawtucket in 1999, he moved in with his brother, whom he had not seen for years.  *Tr.* 52:1-11.  His brother had found him, and arranged the reunion with his sister, whom he had not seen for years either.   The parties stipulated that after living in Pawtucket for a few months, "[i]n 1999, Defendant moved in with his sister, Billie-Jo Stevens, and her minor children at their residence in Woonsocket, Rhode Island."  *Stipulations* ¶ 12.  But, when he registered in Woonsocket with Detective Durand on October 20, 2000, his address and his sister's address were different.  Gov't Ex. L.  He testified he was living with his fiancee, "right next-door" to his sister's residence.  *Tr.* 51:21-23.  Then, at some point prior to 2002, he did move in with his sister.  Gov't Ex. R.  When he moved to Maine on January 17, 2007, it was to live in Waterville with his sister and her family.  The apparent conflict between Mr. Stevens' testimony and the parties' stipulation is immaterial, because it goes to merely when Mr. Stevens moved into his sister's house and not when they were reunited.  The Court therefore does not resolve it.

this was an "honest mistake." *Tr.* 52:11.  Mr. Stevens explained his failure by saying, "I was just

reunited with my sister after 17 years of being apart," *Tr.* 51:19-20, which cannot be correct.

The parties stipulated that Mr. Stevens moved to Woonsocket to live with his sister and her

family in 1999.  *Stipulation* ¶ 12.  By the time of his re-registration with Detective Durand on

October 20, 2000, he had been reunited with his sister for at least nine full months.[15]   His

mistake, regardless of its characterization, resulted in a second conviction on November 3, 2000.

> **v.     The October 20, 2000 Registration with Detective Durand**

Mr. Stevens registered with Detective Durand on October 20, 2000.  Gov't Ex. L.

Detective Durand testified that his practice was to inform sex offenders that their registration

obligations continued until ten years after the end of their terms of probation:

> In order to find the expiration date, I run their background check to find out the
> disposition of that particular case, and then I add ten years from the release of
> probation.

*Tr.* 20:6-9.  He said that when Mr. Stevens registered with him in October 2000, he informed Mr.

Stevens of his obligations in a manner consistent with his practice.  *Tr.* 26:1-21.  Detective

Durand began as the coordinator of the sex offender registry in 1997 and he agreed that this is

the way Rhode Island law has worked throughout his tenure at the Woonsocket Police

Department. *Tr.* 13:12-25, 14:1.

Detective Durand was confused.  Assuming he became the coordinator of the sex

offender registry in Woonsocket after the July 3, 1997 law was enacted, this law required sex

---

[15] There is a more likely explanation.  Mr. Stevens had not seen his sister for years and she invited him to move in with her and her minor children.  It would not be beyond imagination that Mr. Stevens would be reluctant to immediately reveal to his sister his two sexual assault convictions.  This would be especially logical if—as the Government alleged in its memorandum—the victims of the sexual assault were 15 and 13 year old girls.  But, there is no evidence on this point.  The Court will not make inferences about Mr. Stevens' motivation, particularly because he testified that his sister accompanied him when he re-registered after his 2000 arrest, *Tr.* 51:8-16, and he continued to live with his sister in both Rhode Island and Maine.

offenders to register "for a period of ten (10) years subsequent to the date of release from confinement or placement on parole, supervised release or probation," not ten years from the end of probation.  R.I. Gen. Laws § 11-37.1-4(A) (1997); Gov't Ex. S.  It was not until July 10, 2003 that Rhode Island amended the law to require that a sex offender register annually "for a period of ten (10) years from the expiration of sentence for the offense."  R.I. Gen. Laws § 11-37.1-4(a) (2003).  The Court cannot conclude that Detective Durand informed Mr. Stevens about the provisions of a law that had not yet been enacted when the two met on October 20, 2000.

There are a number of possible explanations:  first, Detective Durand failed to mention the durational requirement; second, Detective Durand told Mr. Stevens in accordance with *Flores* that he fit within a limited pre-July 24, 1996 group of sex offenders required to register for life; third, he told Mr. Stevens, consistent with the July 24, 1996 version of the law, that he was required to register for ten years from the date of his conviction; and, fourth, he told him, consistent with the July 3, 1997 law, that he was required to register for ten years from the commencement of his term of probation.

Based on this record, the Court finds that Detective Durand told Mr. Stevens something about the duration of the registration requirement on October 20, 2000, but it cannot make any findings on what he told him.  The first finding is based on Detective Durand's testimony that he routinely discussed with the registrant the duration of the registration requirement, and would have done so with Mr. Stevens.  *Tr.* 28:13-20.

However, turning to what he said, there is no suggestion that Detective Durand was aware of the *Flores* exception to the durational period and the Court cannot infer such knowledge.  It would have been logical for the Detective to inform Mr. Stevens that his registration requirement extended for ten years from the date of the commencement of his

26

probation, since this had been the law in Rhode Island since 1997.  But, the registration form does not contain a place for the date when the offender began probation; it only contains a reference to the date of sentencing, a date consistent with the pre-July 3, 1997 law.  Gov't Ex. L. Coupled with Detective Durand's testimony that he had always told sex offenders that their registration obligation lasted for a period of ten years from the date their probation ended, the cumulative evidence in this record is simply too confusing to make any findings about what the Detective told Mr. Stevens in 2000, and Mr. Stevens was not asked.

### vi.      The August 5, 2002 Registration

Mr. Stevens registered as a sex offender for the last time on August 5, 2002 in Woonsocket.  Gov't Ex. R.  Detective Hopkins, who registered Mr. Stevens, was not called as a witness.  But, Detective Durand, who both trained Detective Hopkins and found the 2002 registration in Mr. Stevens' file, testified that based on his review, Mr. Stevens voluntarily registered on August 5, 2002.  *Tr.* 30:22-24, 31:11-23.  Mr. Stevens agreed that he did not register in 2002 in connection with a court proceeding.  *Tr.* 52:12-18.  There being no reason to discredit this testimony, the Court infers that Mr. Stevens, either on his own volition or at the request of his probation officer, updated his registration on August 5, 2002 to reflect the fact that he had moved into his sister's home, next door to which he had been living since he moved to Woonsocket in 1999.

### vii.     Events Subsequent to August 5, 2002

Mr. Stevens continued to live on in Woonsocket from August 5, 2002 until at least April 2, 2004, when a police check confirmed his presence there.[16]  *Stipulations ¶* 17; Gov't Ex. O.

---

[16] Mr. Stevens points out that Exhibit O, dated April 3, 2004, does not reflect that he changed his address in August 2002.  *Def.'s Post-Trial Br.* at 10 n.3; *see* Gov't Exs. O, R.  It is possible that he is correct that Rhode Island's tracking and data storage systems are so riddled with glitches that they are unreliable.  On the other hand, there are countless possible explanations for this discrepancy.

Then, sometime in 2004, he moved to a different address in Woonsocket without updating his registration.  Gov't Ex. Q.  Later, before finally moving to Maine, he again moved to another address in Woonsocket without updating his registration.  *Id.*  Mr. Stevens' later moves without re-registering are consistent with his stated understanding that his obligation to register ended when he had served his entire term of probation, which occurred on September 8, 2003.  *Stipulations* ¶ 3.  His sister was fully aware of his prior convictions and he had already been convicted twice of failing to register.  Even though his sentences for these violations had been benign, it remains difficult to understand why he failed to continue to register after September 8, 2003.

### viii.    Finding—Actual Knowledge

The Court finds that the Government has failed to prove beyond a reasonable doubt that Mr. Stevens actually knew that he was obligated to register as a sex offender in Rhode Island after September 8, 2003.  The Court bases this finding on the periodic extensions of the registration obligation; the understandable confusion of Rhode Island officers, including Detective Durand, regarding application of the frequently changing law; and, on the absence of any direct evidence of Mr. Stevens' actual knowledge that his registration requirement persisted beyond September 8, 2003.  Similarly, the Court finds that the Government failed to prove beyond a reasonable doubt that Mr. Stevens actually knew that he was obligated to register as a sex offender under Maine or federal law.  The Court bases this finding on the absence of any evidence on either issue.

### b.    Proof of Knowing Violation in the Absence of Actual Knowledge

Despite his lack of actual knowledge, Mr. Stevens is still guilty of violating SORNA, if he knew that he had not registered.  The knowledge element of SORNA provides that

28

"[w]hoever . . . knowingly fails to register or update a registration as required" by SORNA commits a violation of SORNA, assuming the other elements have been proven.  18 U.S.C. § 2250(a)(3).  The question narrows to what the "knowingly fail to register" requirement in § 2250(a)(3) means.  The classic definition of "knowingly" is that "the act was done voluntarily and intentionally and not because of mistake or accident."  *Pattern Criminal Jury Instructions for the District Courts of the First Circuit* § 2.14 (2009); *United States v. Tracy*, 36 F.3d 187, 194-95 (1st Cir. 1994).  But, this does not answer whether SORNA requires that the defendant actually know that he had a legal obligation to register or whether it only requires that the defendant know he is not registering.

The language of the statute itself strongly suggests that the adverb "knowingly" only modifies the verb phrase "fails to register."  The language does not invite an interpretation in which the adverb "knowingly" also modifies the next phrase, "as required by [SORNA]."  In other words, § 2250(a)(3) does not purport to limit criminal liability to those who "knowingly fail[] to register or update a registration *with the intent to violate SORNA*."  *United States v. Gonzales*, No. 5:07cr27-RS, 2007 U.S. Dist. LEXIS 58035, at *14 (N.D. Fla. Aug. 9, 2007) (emphasis in original); *but see United States v. Godin*, 534 F.3d 51 (1st Cir. 2008) (concluding, on the basis of statutory ambiguity and the rule of lenity, that the "knowingly" scienter element of 18 U.S.C. § 1028A requires that a defendant know the means of identification he wrongfully possesses in fact identifies another person).

In *United States v. DiTomasso*, Judge Lisi concluded that SORNA does not require the specific intent to violate the registration law.  552 F. Supp. 2d 233, 242-44 (D.R.I. 2008).  Judge Lisi relied on the absence of any modifiers in the statute such as "intent" or "willfully" and the legislative history of SORNA.  *Id.*  Other district courts have agreed.  *United States v. Elmer*, No.

08-20033-01-KHV, 2008 U.S. Dist. LEXIS 73220, at *34 (D. Kan. Sept. 23, 2008); *United States v. Shenandoah*, 572 F. Supp. 2d 566, 583 (M.D. Pa. 2008); *Gonzales*, 2007 U.S. Dist. LEXIS 58035, at *12-16.[17]   This analysis comports with the Supreme Court's instruction that "the term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law." *Bryan v. United States*, 524 U.S. 184, 192 (1998).  Instead, "unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Id.* at 193 (footnote omitted); *United States v. Meade*, 175 F.3d 215, 226 n.5 (1st Cir. 1999).

Criminal laws governing record-keeping by federally licensed firearms importers, manufacturers, dealers, and collectors are closely analogous.  Among other things, it is unlawful for any of these persons "knowingly . . . to fail to properly maintain, any record which he is required to keep pursuant to [18 U.S.C. § 923] or regulations promulgated thereunder."  18 U.S.C. § 922(m).  In *United States v. Currier*, 621 F.2d 7 (1st Cir. 1980), the defendant appealed a conviction for violating § 922(m).  He contended that he could not be convicted for failing to complete certain firearms transaction records, because he did not know they were required, and the Government had failed to prove that he specifically intended to violate the law.  *Currier*, 621 F.2d at 9-10.  The First Circuit disagreed, stating that the Government had to prove only that the defendant did not complete the required forms.  *Id.*  The Court explained that "[i]n the absence of legislative history to the contrary, Congress' use of the word 'knowingly' in a criminal statute aimed at regulating dangerous objects does not itself abrogate the ancient maxim that ignorance

---

[17] By similar token, many courts have concluded that notice of SORNA, under 42 U.S.C. § 16917 or otherwise, is not an element of a § 2250(a) offense.  *See United States v. Pendleton*, No. 08-59-GMS, 2009 U.S. Dist. LEXIS 9708, at *26 (D. Del. Feb. 10, 2009); *United States v. Keleher*, No. 1:07-cr-00332-OWW, 2008 U.S. Dist. LEXIS 105532, at *18 (E.D. Cal. Nov. 19, 2008); *Elmer*, 2008 U.S. Dist. LEXIS 73220, at *34; *Shenandoah*, 572 F. Supp. 2d at 582-83.

of the law is no excuse." *Currier*, 621 F.2d at 10 (citing *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558 (1971)).

Although § 922(m) and SORNA are not entirely congruous, they are generally so: both proscribe the knowing failure to discharge a duty imposed by a discrete, if related, law. Because the First Circuit affirmed a conviction under § 922(m) notwithstanding the defendant's ignorance of the underlying obligation, it follows that SORNA operates in the same fashion. Neither knowledge of the law nor a specific intent to violate it is required. In short, all the Government must prove in a § 2250(a) prosecution is that the Defendant knew he was not registering, not that the Defendant knew he was violating the law by not registering.[18] On this point, the evidence is irrefutable and the Court finds beyond a reasonable doubt that Olin Dudley Stevens knowingly failed to register or update a registration as required by SORNA in violation of 18 U.S.C. § 2250(a).[19]

### c. Due Process, Constructive Notice, and *Lambert v. California*

In one of his motions to dismiss the Indictment, Mr. Stevens contended that criminalizing his failure to register violates the Due Process Clause if he was not "aware of the specific requirements at issue." *Mot. to Dismiss Indictment as Unconstitutional as Applied* at 7 (Docket # 16) (citing *Lambert v. California*, 355 U.S. 225 (1957)). The Court rejected this argument on two independently sufficient grounds. *Stevens*, 578 F. Supp. 2d at 187-88. First, the Court

---

[18] This point of law is by no means settled. If the First Circuit applied *Godin* to § 2250(a)(3), it might arrive at a different conclusion. By finding that the Government failed to establish that Mr. Stevens knowingly violated the registration requirement, but finding him guilty of knowingly failing to register, the Court has framed this case for appellate review.

[19] It is true that the durational requirements of Rhode Island sex offender registration law are confusing, and Mr. Stevens claimed that he was given inaccurate advice as to the duration of the registration requirement by his sentencing judge and probation officer. Mr. Stevens has not asserted an entrapment by estoppel defense. But, the Court has factually rejected his claim that he was given such improper advice from either the sentencing judge or his probation officer and has been unable to draw any conclusions about what Detective Durand or others told him. He has not established the elements of an entrapment by estoppel defense. *United States v. Lemieux*, 550 F. Supp. 2d 127, 130 (D. Me. 2008) (citing *United States v. Ellis*, 168 F.3d 558, 561 (1st Cir. 1999)).

accepted as true the allegation in the Indictment that Mr. Stevens "'knowingly failed to register.'"  *Id.* at 187 (quoting the Indictment).  Characterizing Mr. Stevens' assertion that he was uninformed of SORNA's requirements as one of fact and not law, the Court stated that "whether he in fact knew enough to meet this allegation must await trial."  *Id.*  Second, the Court concluded that Mr. Stevens' actual ignorance of SORNA's requirements is not of constitutional dimension and that *Lambert v. California* is not implicated.  *Id.*; *see Meade*, 175 F.3d at 225.

As for the first ground, the Court has determined that § 2250(a) is a general intent crime, and that the Government has proven Mr. Stevens possessed the requisite knowledge to sustain a conviction.  The Court declines to hold that Congress may not enact such crimes without violating the Due Process Clause.  As for the second ground, the Court sees no reason to deviate from its earlier analysis of Mr. Stevens' ignorance of SORNA.  The Government maintains, as it did pretrial, that "ignorance of the law is no excuse," *Gov't's Post-Trial Br.* at 8, and Mr. Stevens offers no compelling authority that it is.  *See Def.'s Post-Trial Br.* at 7-12.  On this point, the First Circuit has observed that

> [a]t the very least, a defendant seeking to avoid prosecution on the ground of ignorance of the law must satisfy two requirements.  First, his conduct must have been "wholly passive."  Second, there must be an absence of "circumstances that should alert the doer to the consequences of his deed."

*United States v. Denis*, 297 F.3d 25, 29 (1st Cir. 2002) (quoting *Lambert*, 355 U.S. at 228).  Mr. Stevens has failed to convince the Court that he meets both prongs of *Denis*.  Certain offenders, such as sex offenders, are "on constructive notice that they may be subjected to future regulation."  *Shenandoah*, 572 F. Supp. 2d at 581; *see Roberts*, 2007 U.S. Dist. LEXIS 54646, at *5-6.  Individuals convicted of sex offenses are "on notice that [they] should inquire about the necessity of registration."  *Shenandoah*, 572 F. Supp. 2d at 582.  This is all the more so, when they "engage in interstate travel."  *Id.*

Here, Mr. Stevens was certainly aware of the likelihood of an ongoing obligation to register as a sex offender.  He had been convicted twice of failing to do so; he had been given repeated notices of his continuing duty; and, he had registered and re-registered periodically in Rhode Island.[20]  There is no evidence that Mr. Stevens made even a minimal effort to determine whether he had such an obligation either in Maine or Rhode Island.  Instead, Mr. Stevens relied on his inaccurate memory of what his sentencing judge and probation officer told him fourteen years earlier about the duration of his registration obligation.  Had Mr. Stevens made a cursory inquiry, he would have discovered that continued registration was required in Rhode Island and in Maine.  The Court is satisfied that Mr. Stevens had constructive knowledge of his obligations to register as a sex offender under state law, and that requiring him to abide SORNA does not infringe his right to due process of law.

## III.     CONCLUSION

The Court finds Olin Dudley Stevens guilty as charged of the crime of failing to register as a sex offender under 18 U.S.C. § 2250(a).[21]

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 18th day of February, 2009

---

[20] *See United States v. Torres*, 573 F. Supp. 2d 925, 945 (W.D. Tex. 2008) (concurring with "almost every other United States District Court" that has addressed the issue, and "holding that actual notice of the federal requirement was not necessary for purpose of the Due Process Clause and that knowledge of state reporting requirements sufficed" (internal quotations omitted)).

[21] The Court hereby orders the preparation of the customary pre-sentence investigation report.